Argued 24 February; decided 9 March, 1903.

## DURNING v. WALZ.

[71 Pac. 662.]

CONSTRUCTION OF COMPLAINT—FLOODING LAND.

1. A fair construction of the complaint in this case is that plaintiffs admit the right of defendant to discharge the surplus water from his irrigating ditches onto their land, but seek to have the discharge confined to one point.

CHANGING THEORY OF CASE ON APPEAL.*

2. Where a case has been tried on a certain theory, with the acquiescence of the parties, it must be so continued on appeal, and the supreme court will not permit a change of position in that tribunal.

EASEMENT TO DISCHARGE WATER FROM SPRING.

3. A spring on defendant's land afforded a continuous stream of water, which originally flowed, through a swale, over his and plaintiff's land. Defendant purchased his land in 1869, and divided the water from the swale for irrigating purposes, returning the surplus to the swale. Later, at the request of plaintiff's grantor, a ditch was dug to conduct such surplus to a point about twenty rods east of the west corner of plaintiff's land, and since then the surplus has been discharged at that point. Plaintiff purchased in 1894, and dug a ditch for the conduct of surplus water flowing from defendant's land through a tract of his land, thereby irrigating it. The soil was of such character that when the flow of water was interrupted, it baked and cracked, so that when it was again turned in it flowed through the cracks into the swale and prevented cultivation. Held, that defendant had the right to use all the water from the spring for irrigating purposes, and to discharge the surplus, if any, at the point where the ditch was dug for plaintiff's grantor, and any damage resulting to plaintiff therefrom was not attributable to defendant.

From Jackson: HIERO K. HANNA, Judge.

This is a suit by John and Maria Durning against Jacob Walz, to regulate the flow of surplus water from defendant's land to that of plaintiffs. It is alleged in the complaint, in substance, that plaintiffs own about eighty-three acres of land in Jackson County, and that defendant owns a tract immediately south of, but separated from, theirs by a public road; that there are several springs on his land, the waters from which and the rainfall have, from time immemorial, flowed in a swale to and across plaintiffs' land, entering it about forty rods west of the southeast corner; that for more than ten years defendant has diverted water from said swale, and used it in

*NOTE.—See, also, Wyatt v. Henderson, 31 Or. 48; Anderson v. Portland F. Mills Co. 37 Or. 483; Mattis v. Hosmer, 37 Or. 523; Christenson v. Nelson, 38 Or. 473; Larch Mt. Invest Co. v. Garbade, 41 Or. 123; Oregon v. Davis, 42 Or. 34.—REPORTER.

irrigating his land, and prior to 1898 discharged the surplus into said highway at a point about twenty rods east of the southwest corner of their land, across which it flows in a swale, except in the rainy season, when not needed for irrigation, it flows on the east side of their premises; that in 1895 plaintiffs constructed a ditch from near the southwest corner of their land to carry off the surplus water, and prevent it from injuring their premises; that the soil along the line thereof is of such a character that, unless water constantly flows, the ditch becomes dry, and cracks, permitting the water, when its flow is resumed, to percolate, and injure their land; that since 1898 defendant has, in irrigating seasons, discharged the surplus from his ditches at regular intervals, the interruptions in the flow of which have ruined their ditch, and the resumption has prevented them from plowing, cultivating, or raising crops on about five acres of land, which, without such inundation, would have been very productive; that during the last two years defendant has discharged large quantities of water from one of his ditches upon said highway at a point about ten rods from plaintiffs' southeast corner, across which it has flowed in an unusual place, to their irreparable injury; that, if said surplus were continually discharged at one place, plaintiffs could control it so as to cause them little damage; that during the last three years defendant has discharged surplus water at various places upon their land, and, claiming the right to do so, he threatens to continue such trespass at irregular intervals, and at such places as may suit his fancy, and, unless prevented by an order of the court, he will carry his menace into effect. The answer denies the material allegations of the complaint, and avers that defendant has for more than thirty years conducted the water flowing from a spring on his premises, and used it in irrigating his land; that such part of the water as was not necessary for that purpose has for more than twenty-five years flowed in a ditch to plaintiffs' land, which it enters near the southwest corner; that at times during each year the entire quantity of water from said spring is needed to irrigate his land, thereby preventing any flow to

plaintiffs' premises, in consequence of which their ditch becomes dry and cracks; that defendant's and plaintiffs' lands slope toward the north, and in the rainy season surface water necessarily flows from his land upon theirs, but the injury of which they complain is not caused by any wrongful act on his part. A reply having been filed, denying the allegations of new matter in the answer, a trial was had, resulting in a decree dismissing the suit, and plaintiffs appeal.     AFFIRMED.

For appellants there was a brief over the names of *William I. Vawter, Austin S. Hammond* and *Watson & Beekman,* with an oral argument by *Mr. Hammond.*

For respondent there was a brief over the names of *William M. Colvig* and *Charles Prim,* with an oral argument by *Mr. Colvig.*

MR. CHIEF JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

1. It is contended that, the answer having failed to allege any hostile or adverse use of plaintiffs' premises, and no testimony on that subject having been introduced at the trial, no prescriptive right to flood their land was established, and that, as defendant's invasion thereof may, by the lapse of time, ripen into an easement, causing them irreparable injury, the court erred in dismissing the suit and in not restraining the trespass of which they complain. In our opinion, a fair interpretation of the allegations of the complaint, considered with regard to their general scope and the nature of the relief demanded, which is that defendant be required to discharge the surplus water from his ditch continually at one point upon plaintiffs' land, or that he may be restrained from discharging any water thereon, shows that the cause of suit was based upon the assumption, and evidently tried by the court without objection upon the theory, that defendant possessed the right to discharge the surplus water from his irrigating ditches upon plaintiffs' land, and they sought merely to restrict the exercise of such right to one particular place. The complaint being

based upon the hypothesis adverted to, no necessity existed for alleging in the answer the facts constituting the foundation of defendant's right, the ultimate fact in that particular having, in our opinion, been admitted.

2. The only issues involved, then, are the place and extent of the easement, and the theory adopted by the trial court with the acquiescence of the parties will be applied in this court: 21 Ency. Pl. & Pr. 664; *Bray's Administrator* v. *Seligman's Administrator,* 75 Mo. 31; *Raming* v. *Metropolitan St. Ry. Co.* 157 Mo. 477 (57 S. W. 269).

3. An examination of the testimony given at the trial discloses that a small spring, situated near the southeast corner of defendant's land, affords a perennial stream of water, which originally flowed in a swale in a northerly direction across his and plaintiffs' lands, entering the latter tract at a point about forty rods west of the southeast corner. The defendant purchased his land in 1869, at which time a ditch had been dug near the spring, and the water, being diverted from the swale, was conducted in a northerly direction, and used to irrigate a garden and an orchard near the north end of his premises, the surplus water being returned to the swale. More than twenty-five years prior to the beginning of this suit, however, at the request and for the benefit of one Dollarhide, plaintiffs' predecessor in interest, a ditch was dug to conduct the water not needed by defendant for irrigation to a point about twenty rods east of the southwest corner of the land now owned by plaintiffs, and from that time to the present it has been discharged at the same place. The plaintiffs purchased their land in 1894, and the year following dug a ditch whereby they conveyed the surplus water to a point near their north boundary, where it was used to irrigate a garden; and the swale on the west side of their land, containing about six acres, being drained by this ditch, was cultivated that year. The soil on the west side of their premises is of such a character that, unless the water constantly flows in their ditch, it bakes, leaving deep cracks, and when the water is again turned in it returns to the swale, preventing its cultivation. The volume of water afforded

by said spring seldom varies, and is at all times quite small, so that in the irrigating seasons defendant frequently needs the entire supply for his own use, at which times no surplus flows to plaintiffs' land, in consequence of which their ditch dries and cracks, allowing the flow of water, when resumed, to escape. It must be inferred that the uninterrupted flow of the surplus water to plaintiffs' land is beneficial to them, for Durning, as a witness in his own behalf, testified that its discharge through their ditch in the summer did him no injury, except when turned in after an interruption in the flow thereof. A county road extends north and south along defendant's east border, by the side of which a ditch has been dug, and another in his field, parallel therewith, both having been in use more than thirty years to carry off the winter surface water which is discharged on the highway extending east and west on his north boundary, whence it usually flows west in a ditch about forty rods, and thence north in the swale through plaintiffs' land; but during the last year, this ditch being somewhat obstructed, a part of the surface water has entered thereon at a point about ten rods west of their southeast corner.

We think the theory adopted at the trial concedes, and that the testimony conclusively shows, that defendant possesses the right to discharge the surplus water from his irrigating ditch at a point about twenty rods east of plaintiffs' southwest corner; but as the spring on his land affords only a limited quantity of water, nearly all of which is necessarily used by him for irrigation, plaintiffs can secure but little surplus in the summer, when it is most needed, and are inconvenienced by the interruption in the flow thereof. The swale into which the water of said spring formerly emptied is dry in the summer; nor does any water, during that season, flow in the ditches by the side of the road on the eastern border of defendant's land. In the winter, however, the water from the spring, not being used for irrigation, flows, with the surface water, in said swale, which from time immemorial has been its natural course; and, as these waters were wont to flow therein, plaintiffs have not been injured thereby in consequence of any act on defendant's

42 OR.—8

part. The surface water flowing north in defendant's east roadside ditches is discharged at the northeast corner of his land into another ditch, which, when unobstructed, permits it to flow west about forty rods, where it empties into said swale; but during the last year, the latter ditch not having been cleaned out, the water overflowed the road at a point about ten rods west of said corner, and ran across plaintiffs' land at an unusual place. M. Bellinger, as defendant's witness, testified that in 1895 he, as road supervisor, opened the ditch running west along the highway so as to conduct the water into said swale. From his statement it would seem to be the duty of the road supervisor to keep this ditch in repair, but, however that may be, the controversy involved in this suit relates chiefly to the irregular flow of the surplus water in the irrigating season, and not to the duty of keeping the ditch on the side of the highway open. The trial court having found that defendant possessed the right to use all the water diverted from the swale in irrigating his land, and, if any surplus remained after his necessities were supplied, to discharge it upon plaintiffs' land, in which conclusion we concur, no error was committed in dismissing the suit, and hence the decree is affirmed.

AFFIRMED.

Decided 25 August; rehearing denied 3 November, 1902.