## JONES v. WARING.

(200 Pac. 908.)

**Partnership—Sham Sale by Partner Held not Termination of Relationship so as to Deprive Copartner of Interest in Business.**

1. Where plaintiff advanced one fifth of the price of a lease and furnishings of an apartment house and was to have one fifth the net profits from same and one fifth of the amount of selling price when lease was sold, *held,* that a sham sale was not such termination of relationship as would excuse managing partner from accounting for rents and profits after such sale, and for the proceeds of an actual sale thereafter made in the name of the sham vendee.

**Appeal and Error—Jurisdictional Question to be Raised in Lower Courts.**

2. Having tried a case upon issues raised in the lower court, in the absence of demurrer to the complaint, the defendant cannot for the first time in the appellate court raise the question of equitable jurisdiction.

**Appeal and Error—Finding not Disturbed When Accounts are Uncertain and Lower Court has Heard the Evidence.**

3. In an action for accounting, where the accounts are not intelligible and were crudely kept, and from the record it is hard to determine the amount of net profits, the finding of the trial court, who saw and heard the witnesses testify, will not be disturbed.

From Multnomah: H. H. BELT, Judge.

---

1. Duty of partner to account for secret profits, see note in **Ann. Cas. 1914D, 433.**

Department 1.

The respondent, Della Jones, and the appellant, Clara Waring, are sisters. For cause of suit Della alleges that on August 15, 1918, she entered into an agreement with her sister in and by which for $7,500 they purchased the furniture and lease of what is known as the Morton Apartments in the City of Portland, at an agreed rental of $375 per month, and that of the purchase price she was to pay $1,450 and her sister, the balance; that in the event of a sale the plaintiff should have one fifth of the proceeds and the defendant four fifths; that in making the transfer the papers were made out in the sole name of the defendant; that possession of the property was taken under the lease and bill of sale; that from and after August 15, 1918, it was operated as an apartment house; that by mutual agreement the defendant had the collection of the rent and the conduct of the business; that between August 15, 1918, and March 1, 1920, and pursuant to their agreement, they had possession of the property under their joint ownership and that the defendant received a monthly income of $1,160 from rental and represented to the plaintiff that the net income was $500 per month, out of which she paid $100 per month to the plaintiff as her one fifth. It is then alleged that on March 1, 1920, without the knowledge and consent of the plaintiff, the defendant sold the lease and furniture to Robert Russell and J. Crawford, for the sum of $15,000, $10,000 of which was paid in cash and the remaining $5,000 was secured by a chattel mortgage on the property taken in the name of the defendant, payable in installments of $250 per month; that the defendant paid the plaintiff $1,500 but refuses to further

account to the plaintiff or pay her any more money. Plaintiff prays for an accounting for the rental between August 1, 1919, and March 1, 1920, and one fifth of the amount for which the property was sold to Russell and Crawford, less the sum of $1,500 which she had received. *Pendente lite* and based upon proper allegations in the complaint, the court issued an order enjoining the defendant from disposing of her property. The defendant made a general denial of the material allegations of the complaint and for a further and separate answer alleges that at the time of the original purchase of the lease, it was agreed that the defendant should pay the plaintiff one fifth of the net profits until such time as she would be able to repay the plaintiff in full for her $1,450 and that in the event of a sale of the property, prior to such repayment, the defendant "would pay to the plaintiff one fifth of the net profits derived from the sale of said apartment house"; that such net profits were paid until July 15, 1919, at which time she made a *bona fide* sale of the apartment house to one H. S. Collins, for the agreed price of $7,500, and on August 1, 1919, tendered the plaintiff $1,500, in full payment of the $1,450 which she advanced on August 15, 1918; that plaintiff accepted the money in full settlement of her claim and share of the profits, and surrendered to the defendant the written receipt which the plaintiff held as evidence of the money she paid at the time of the original purchase. It is then alleged that the title to the property passed to Collins and that thereafter the defendant continued to operate it as his property and duly accounted to him for the proceeds; that on March 1, 1920, the defendant in her own name but

in truth and in fact as the agent and trustee of Collins, sold the apartment house to Russell and Crawford for $15,000 upon the terms alleged in the complaint; that the money received and the $5,000 note and chattel mortgage is the sole property of Collins; that there was a full and complete settlement between plaintiff and defendant on August 1, 1919, when the defendant fully accounted to the plaintiff. The reply denies all of the new matter in the answer and in substance alleges that the sale to Collins was a sham and that in fact the $1,500 which was then paid to the plaintiff was the money of the defendant and that no sale was ever made to Collins; that after the alleged sale "plaintiff relied upon said representations so made by defendant and believed them to be true and was induced and misled thereby to accept said $1,500 from said defendant, understanding and believing the same was the amount of her one-fifth interest in the consideration then and there paid by said H. S. Collins, as the purchase price of said apartment house and was thereby induced to and by reason thereof did, upon demand of defendant, therefor surrender and deliver to defendant a written instrument signed by defendant" of her interest in the property; that by reason of such facts, the defendant should be estopped to claim or assert that she ever sold the property to Collins for $7,500, or that she was not the owner of the property at the time it was sold to Russell and Crawford for $15,000. After the taking of testimony on such issues the lower court found that a partnership existed between the plaintiff and the defendant in the purchase of the property on August 15, 1918, which continued until March 1, 1920; that the interest of the plaintiff therein was one fifth and

of the defendant four fifths from the proceeds of the sale of the property on March 1, 1920, and a like share in all the profits to that date; that one fifth of the profits from August 1, 1919, to March 1, 1920, was $410.25, and one fifth of the net proceeds from the sale to Russell and Crawford was $1,329.10, or a total of $1,739.35, for which amount it rendered a decree for the plaintiff. The defendant appeals, claiming that the court erred in rendering a decree for the plaintiff; in refusing to render a decree for the defendant; in finding that any partnership existed after August 1, 1919, and in ordering an accounting of the profits between August 1, 1919, and March 1, 1920. The plaintiff filed a cross-appeal claiming that the profits between August 1, 1919, and March 1, 1920, were $668.83, instead of $410.25, as found by the court, and contends she should have a decree for $258.25 more.                 AFFIRMED.

For appellant there was a brief over the names of *Mr. J. G. Arnold* and *Mr. Henry Bauer,* with an oral argument by *Mr. Arnold.*

For respondent there was a brief over the names of *Mr. W. T. Hume* and *Mr. H. Daniel,* with an oral argument by *Mr. Hume.*

JOHNS, J.—1. The defendant did not move against or demur to the complaint and admits that on August 15, 1918, the plaintiff furnished and paid $1,450, one fifth of the original purchase price of the property. In her further and separate answer she alleges in substance that she was to pay the plaintiff one fifth of the net proceeds from the operation of the apartment house until such time as the

plaintiff should be paid in full and that in the event
of a sale of the property prior to such payment,
the defendant was to then pay the plaintiff "one fifth
of the net profits derived from the sale" and that
the $1,450 was in the nature of a loan. It appears
from the record that the net profits from August 15,
1918, to July 15, 1919, were about $500 a month, out
of which the defendant paid the plaintiff $100 a
month as her share during that time. The defendant
contends that in July of 1919, she sold the property
to H. S. Collins for $7,500, out of which she then paid
plaintiff $1,500 in full settlement of her interest in
the property. In other words, that between August
15, 1918, and July 15, 1919, defendant claims she
paid the plaintiff $1,100 on account of net profits
derived from the operation of the property and that
when she made the sale to Collins in July, 1919,
she paid her the further sum of $1,500 in full settle-
ment. Under her own theory the defendant thus
recognizes the right of the plaintiff to share in the
net profits pending any sale of the property and
affirmatively alleges that from and out of the pro-
ceeds of any sale "the defendant would pay to the
plaintiff one fifth of the net profits derived from the
sale." The following is from the record:

"The Court: I think there is some issue in the
pleadings in regard to the relationship. You deny
there was a partnership relation existing, in the
pleadings; I think plaintiff is entitled to show, if she
can, there was a partnership relation, on the basis of
an accounting.

"Mr. McCurtain: Well, I don't know; I don't want
to admit in terms there was a partnership relation—

"The Court: Will you admit she would be entitled
to an accounting of the rents and profits?

"Mr. McCurtain: There is no dispute about that, your Honor can't try an accounting; if they can show this sale was fraudulent, she is entitled to one fifth of the net proceeds on that, I will admit she would be entitled to one fifth of the excess in the sale price over and above the $7,500 price that we settled with her for. * *

"Mr. McCurtain: * * I want to keep the court's mind on the issue in this case and that is if they prove this was a fake or fraudulent sale to Dr. Collins, they are entitled to a decree in accordance with the complaint."

2. Having tried the case upon such issues in the lower court, in the absence of a demurrer to the complaint the defendant cannot for the first time in this court raise the question of equitable jurisdiction; *Kitcherside* v. *Myers,* 10 Or. 21. The Collins sale was a sham. The record is conclusive that the $1,500 paid the plaintiff was the money of the defendant; that Collins never had a dollar invested and that in the making of such payment, he represented and was acting for the defendant; that he never did pay any money on the purchase price; that after the alleged purchase, the defendant remained in the possession and control of the property and continued to manage and operate it in the same manner as she did before the sale and that Collins never did claim it or exercise any acts of ownership over it; that on March 1, 1920, the defendant personally made an actual sale of the property to Russell and Crawford for which she received from them $10,000 cash, a note and chattel mortgage on the property for $5,000 taken in her own name; and that Collins was never consulted about this sale, and never had anything to do with it.

Although the opinion of the lower court expressed at the trial may have been more forcible than elegant, it is fully sustained by the facts shown in the record.

3. In the inception of the transaction, the relations of the sisters were pleasant and harmonious, yet it is very apparent that the defendant later conceived the plan to force her sister out of the business and take her share of the profits, and that was the purpose and intent of the sham sale to Collins. There is no merit in the defense. In her cross-appeal, the plaintiff contends that she should have a decree for $258.25 more, and under the actual facts that might be true, but upon the record before us it is hard to determine the amount of net profits from July 1919, to March 1, 1920. The accounts are not intelligible and were crudely kept. The trial court saw and heard the witnesses testify. The decree is affirmed.

Affirmed.

Burnett, C. J., and Harris and Brown, JJ., concur.