Argued by respondents and submitted on brief by appellants on rehearing April 26, former opinion modified September 25, 1928. Original opinion December 20, 1927, 123 Or. 345.

ELLEN MacVEAGH ET AL. *v.* MULTNOMAH COUNTY ET AL.

(270 Pac. 502.)

For appellants there was a brief over the name of *Mr. Rogers MacVeagh.*

For respondents there was a brief over the names of *Mr. Stanley Myers,* District Attorney, and *Mr.*

*William L. Brewster,* with an oral argument by *Mr. Jay H. Stockman,* Deputy District Attorney.

BROWN, J.—This is a suit in equity, whereby the constitutionality of Chapter 89, General Laws of Oregon, 1913, codified as Sections 4652–4679, Oregon Laws, is challenged. Among other things, the plaintiffs' complaint avers:

"That the county commissioners of Multnomah County, Oregon, by an order duly made and entered on the 24th day of April, 1922, laid out, designated, and created within Multnomah County, Oregon, that certain road assessment district known and designated as 'Road Assessment District No. 2, Multnomah County, Oregon, for the Improvement of County Road No. 1006,' and that all of the proceedings with respect to the creation of said district, as well as a description of the boundaries of said district, are on file in the office of the county clerk of Multnomah County, Oregon."

Then follows an averment that the real property involved in this suit is situate within the boundaries of that road assessment district. The complaint then alleges:

"That said Road Assessment District No. 2 was created under and pursuant to the provisions of Chapter 16, Title XXX, of Oregon Laws (Olson's) for 1920, and that on or about the 15th day of February, 1926, and after the creation of said Road Assessment District No. 2, and pursuant to the provisions of said Chapter 16, Title XXX, Oregon Laws, defendant Multnomah County, acting by and through defendants Smith, Taft, and Phegley, constituting the board of county commissioners of Multnomah County, Oregon, declared its purpose to repair and improve said County Road No. 1006 within said Road Assessment District No. 2;

"That thereafter and pursuant to the provisions of the said Chapter 16, Title XXX, Or. L., said defendant Multnomah County, acting by and through said board of county commissioners, appointed appraisers to view said County Road No. 1006 and to determine and assess the proportionate share of the costs of said contemplated improvement thereof that should be borne by each lot or tract of land within said Road Assessment District No. 2, and that said appraisers thereupon proceeded to and did assess the said real property so owned by plaintiffs in the following respective amounts:"

The lots involved are here designated by number, with the amount assessed to each, and an allegation that each of the respective assessments constitutes a lien on plaintiffs' real property and clouds the title thereto.

Plaintiffs allege that, by reason of such assessments, they have been deprived of their property without due process of law, and in contravention of the Fourteenth Amendment to the Constitution of the United States, and of Article I, Section 18, and Article II (Article XI), Section 4, of the Constitution of the State of Oregon, in that none of the plaintiffs had notice of such assessments. They further allege that the notice of the proposed improvement was required by statute to be published for five consecutive weeks, in a newspaper of general circulation within Multnomah County, and to be posted at each end of the line of the contemplated improvement; but that the publications of the notice which were required to be made before the time for remonstrance expired were not sufficient to impart to plaintiffs notice of the proposed improvements, and that such notices were void as to plaintiffs for the following reasons:

"That said notices did not describe with convenient certainty at all the kind of improvement which was contemplated, the extent of the boundaries and limits thereof, the manner in which said improvement was to be made, or the kinds of materials which were to be used therein * * ; that a copy of said notices, published and posted as aforesaid, is attached hereto, marked Exhibit A, and by this reference made a part hereof. * *

"That none of plaintiffs had any actual notice whatever of said proposed improvement, except such as was imparted by the publication and posting of notices as aforesaid, which plaintiffs allege to have been ineffectual and void."

Exhibit "A," the notice in question, reads:

"ORDER

"Road No. 1006.

"Before the Board of County Commissioners, Multnomah County, Oregon.

"In the Matter of the Improvements of Greenleaf and Warrens Avenues within Green Hills, being Assessment Road District No. 2.

"At this time the board take up for examination the plans, specifications and estimates filed heretofore by the county surveyor with the county clerk for the improvement of Greenleaf and Warrens Avenues within Green Hills, Road Assessment District No. 2, Multnomah County, Oregon, from 987 to road station 2800, and the board having determined that said plans, specifications and estimates are satisfactory:

"It is hereby ordered that said plans, specifications and estimates (be) and are hereby approved.

"Ordered further that it is hereby declared to be the purpose of this board to make the improvement to Greenleaf and Warrens Avenues in Assessment Road District No. 2, Multnomah County, Oregon, as contemplated and described in said plans, specifications and estimate.

"Ordered further that the within order declaring it to be the purpose of this board to make such improvement of Greenleaf and Warrens Avenues shall be published for five consecutive publications, once each week, in a newspaper of general circulation published within Multnomah County, Oregon, and that the county surveyor, within five days from the publications of said order, shall cause to be conspicuously posted at each end of the line of the contemplated improvement of Greenleaf and Warrens Avenues a notice headed, 'Notice of Road Improvement,' in letters not less than one inch in length; said notice to contain in legible characters a copy of the order of this board, and the date of its adoption, and the county surveyor shall file with the county clerk an affidavit of the posting of said notices, stating therein the date and the place where the same have been posted.

"Ordered further that within twenty days from the date of the first publication of this notice the owners of 51 per cent. or more in area of the property within said Road Assessment District No. 2 may make and file with the county clerk a written objection to or remonstrance against said Greenleaf and Warrens Avenues and said objection or remonstrance shall be a bar to any further proceedings in the making of said improvement for a period of one year unless the owners of 51 per cent. or more of the property affected as aforesaid shall subsequently petition therefor; but if no such remonstrance shall be filed within the time designated, the county court shall be deemed to have acquired jurisdiction to proceed with said improvement in the manner provided by law.

"Dated February 15, 1926.

"First Publication, February 20, 1926.

"BOARD OF COUNTY COMMISSIONERS.
"By AMEDEE M. SMITH, Chairman.
"By ERWIN C. TAFT, Commissioner.
"By GRANT PHEGLEY, Commissioner."

Defendants appeared and demurred. The demurrer was sustained by the court and a temporary restraining order theretofore issued was annulled; and on June 30, 1926, a final order was entered allowing defendants' motion for a decree upon the pleadings and dismissing plaintiffs' complaint.

Plaintiffs appeal and assign error of the trial court, in effect, as follows:

First. That the demurrer to plaintiffs' complaint should not have been sustained, for the reason that the Road Assessment District Law, i. e., General Laws of Oregon, 1913, Chapter 89, is void as being in contravention of the Fourteenth Amendment to the Constitution of the United States, and of Article I, Section 18, and Article II (Article XI), Section 4, of the Constitution of the State of Oregon.

Second. That the road improvement proceedings described in plaintiffs' complaint, and the assessments levied in such proceedings, are void, and deprive plaintiffs of their property without due process of law, and without compensation, in contravention of the provisions of the Constitution above noted.

At page 4 of their brief on appeal, the plaintiffs say:

"There is no contention on the part of the appellants that the statute was not complied with in all respects; but appellants do contend that compliance with the statute and the improvement of roads thereunder have deprived them of their property without due process of law. * * The sole point for consideration by this court, therefore, is whether or not the assessment road district statute is unconstitutional."

The averments of plaintiffs' complaint and their assignments of error, together with the foregoing statement quoted from their brief on file herein,

clearly indicate that this suit was brought solely to have the above-described statute declared invalid on the ground that it offends against both the federal and the state Constitutions. As plaintiffs state in their brief, they do not contend that the defendants have not fully met and complied with all the requirements of the enactment in question. But they do forcefully and ably assert that the statute itself is invalid, in that it contravenes the law of the land.

■ The defendants met the contest upon the theory made by the plaintiffs. It is well settled in our jurisdiction that, when a cause has been heard upon a certain theory in the trial court, with the acquiescence of the parties litigant, it must be so continued on appeal: *Durning* v. *Walz*, 42 Or. 109 (71 Pac. 662); *Cobb* v. *Peters*, 68 Or. 14 (136 Pac. 656); *Winn* v. *Taylor*, 98 Or. 556 (190 Pac. 342, 194 Pac. 857); *Jones* v. *Waring*, 101 Or. 403 (200 Pac. 908); *Wallace* v. *American Life Ins. Co.*, 111 Or. 510 (225 Pac. 192); *Hagman* v. *Webber*, 117 Or. 350 (243 Pac. 91, 244 Pac. 83); *Phipps* v. *Stancliff*, 118 Or. 32 (245 Pac. 508). The doctrine that the parties to an appeal are restricted to the theory upon which the cause was prosecuted or defended in the court below is not peculiar to our jurisdiction, but is a well-established general rule of procedure: 2 R. C. L., § 55, Appeal and Error; 21 Ency. Plead. & Prac., p. 667; 3 C. J., § 618, Appeal and Error.

The plaintiffs invoke the protection of that provision of the Fourteenth Amendment that forbids any state to enact legislation depriving any person of life, liberty or property without due process of law.

As far back as 1910, a distinguished author of a treatise on the Constitution of the United States wrote:

"Volumes have been written on the Amendment (Fourteenth Amendment), and more than fifteen hundred decisions by federal and state courts have been rendered and reported on various questions growing out of it, ranging from the power of the municipal council to regulate the height of a board fence, the beating of drums on the streets, * * to the gravest questions of constitutional law." 2 Watson on the Constitution, p. 1607.

■ A tax or assessment upon property arbitrarily imposed, without reference to some system of just apportionment, cannot be upheld. A taxing district can no more arbitrarily levy an assessment for which property may be encumbered and sold than a court can render a judgment against a person without a hearing.

Does the statute offend against the law of the land, as alleged?

■ The phrases "due course of law," "due process of law," and "law of the land" are synonymous. Bouvier's Law Dictionary thus defines "due process of law":

"Any legal proceeding enforced by public authority, whether sanctioned by age or custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves these principles of liberty and justice. *Hurtado* v. *California*, 110 U. S. 516, 28 L. Ed. 232, 4 Sup. Ct. Rep. 111, 292. * *

"Amendment XIV prohibits a state from depriving a person of life, liberty or property without due process of law. A similar provision exists in all the state constitutions. The phrases 'due course of law' and 'the law of the land' are sometimes used; but all three of these phrases have the same meaning" (pp. 946, 947).

If the statute involved gives notice to the injured one, and gives to him a right to be heard to the end that he "shall have remedy," that is, proper and adequate remedy to be ascertained by a tribunal, the inhibition of the constitutional provision has not been offended.

Among other things, the statute provides for the organization of assessment road districts in counties of the state having a population in excess of 150,000 inhabitants, for the purpose of improving the county roads within such district. Section 2 provides for the preparation of maps showing the length and width of any assessment road district formed, together with the several tracts of land embraced therein, and the area of each tract, with the names of the respective owners thereof. Section 3 authorizes the county commissioners, whenever they may deem it expedient, to order the improvement of any part of the county road within such assessment district, to determine the character, kind and extent of such improvement, to determine what lands within such district are specially benefited by such repairs or improvements and the amount to which each parcel or tract of land is benefited, and to levy and collect an assessment upon all lots and parcels of land within the district so benefited by such improvement. This section also provides for the appointment of appraisers to view the road proposed to be improved, who shall determine and report to the County Court at a specified time the amount of benefits accruing to each lot or tract of land within the assessment district. Section 4 provides:

"Whenever the county court shall deem it expedient or necessary to repair or improve any county road located in an assessment road district, or any

part thereof, it shall require from the county surveyor plans and specifications for an appropriate improvement, and estimate of the work to be done, and the probable cost thereof, and the county surveyor shall file such plans, specifications and estimates with the county clerk of said county. If the county court shall find such plans, specifications and estimates to be satisfactory, it shall approve the same, and shall thereupon, by order entered upon the journals of the county court, declare its purpose in making said repair or improvement.''

Section 5 requires the appraisers to meet with the county surveyor or roadmaster, to view the road proposed to be improved, and to assess and determine the benefits to each lot or tract of land, and the proportionate share of the cost thereof. Section 6 requires the publication of the improvement order for five consecutive weeks, in a newspaper of general circulation within the county. Section 7 provides that, within five days from the publication of such order, the county surveyor shall cause the order to be conspicuously posted at each end of the line of the contemplated improvement, and make proof of posting by filing his affidavit with the county clerk. Section 8 provides for the filing of a remonstrance to the proposed improvement within twenty days from the date of the first publication of the notice above described. Section 9 provides that if no remonstrance is filed by the owners of 51 per cent of the property affected, or if any remonstrance filed is not legally signed by the owners of 51 per cent thereof, the County Court shall be deemed to have acquired jurisdiction and order the improvement to be made. Section 10 relates to the payment of the cost of improvement. Section 11 declares that the assessment, when confirmed by the County Court, or

by a higher court, shall constitute a first lien on the real estate respectively assessed. Section 12 relates to the letting of a contract for the proposed improvement. Section 17 provides for the assessment of all the lands benefited within such road assessment district. Section 23 provides:

"Any person or corporation who appeared and filed a remonstrance before the county court against any improvement authorized by this act shall be allowed an appeal to the circuit court, in like manner as appeals are now allowed to be taken from the county court to the circuit court, and on such appeal the only questions that shall be tried in the circuit court shall be the questions, first, that the lands of the party filing the remonstrance are not benefited by said improvement or are assessed too high as compared with other lands assessed as benefited, specifying such lands; second, that it is not practicable to accomplish the proposed improvement or repair without an expense exceeding the aggregate benefits; third, that the proposed work will not be a public utility or convenience. If more than one person appeal, the appeals shall be considered and tried together, and the report of the appraisers or viewers shall be *prima facie* evidence of the facts therein stated and the rights of each appellant shall be separately determined. If the court finds that the lands of any of the parties filing remonstrance and appeal are not benefited, or that it is not practicable to accomplish the proposed improvement without an expense exceeding the aggregate benefits, or that the proposed work will not be a public utility or convenience, judgment shall be rendered for the appellants. If the court finds for any appellant that such appellant has not been ratably assessed for such improvement in proportion to the other owners of property within said district, it shall modify the assessments and equalize the same, and assess the damages as justice may require, and thus modified

and equalized, it shall stand and be adjudged valid; and provided further, that if any appeal is taken from the county court to the circuit court, said county treasurer shall not issue the certificates hereinbefore provided for, until after the final judgment of the circuit court upon such appeal."

The burdens here imposed upon the plaintiffs' real property are special assessments for local improvements. Under the authority vested in the County Court, the road assessment district was created, the nature of the improvements determined, and the amount of the tax fixed.

█ In compliance with the law of the land, it is essential that the owners of land sought to be burdened with a special assessment local improvement tax be given notice and a right to be heard in the matter of the determination as to whether the proposed improvement will be of benefit to such lands; and any local improvement statute failing to provide for notice and hearing upon the question is repugnant to the Constitution. However, the statute involved in the cause at issue is not subject to the objection that it neither gives notice to the land owner nor gives him a hearing upon the questions relating to the matter of the improvement and the levying of a tax therefor. In the matter of the assessment and levy of a tax for local highway improvements, the statute provides that the owner of the land upon which the tax is levied may file a "remonstrance" or "petition," or may file "objections" with the county clerk, which officer is the clerk of the County Court. True, the statute does not prescribe a code of procedure to be followed in that court's trial and determination of the issues. Nor is that necessary. The authority to give notice, and the power to hear

and determine the issues, was conferred upon the court by the legislative assembly of the state, and, as we held in *Pioneer Real Estate Co.* v. *City of Portland,* 119 Or. 1 (247 Pac. 319):

"It is a well-known rule of statutory construction that, where a power is conferred by an act, everything necessary to carry out that power and make it effectual and complete will be implied. Further, that which is implied in a law is as much a part of it as that which is expressed. These long-established principles of statutory construction are universally recognized: Endlich, Interpretation of Statutes, § 418; 2 Sutherland, Statutory Construction, § 508; *Wilson County* v. *National Bank,* 103 U. S. 770 (26 L. Ed. 488, see, also, Rose's U. S. Notes); 25 R. C. L. 980."

Moreover, as will be seen by referring to Section 23 of the statute, which section is hereinabove set out in full, the statute in question provides for an appeal to the Circuit Court, where plaintiffs' alleged grievances could have been determined. Every person affected by the assessment and levy of the tax for special improvements in this assessment road district had a right to remonstrate and appeal from an unfavorable decision on the ground that his property was not benefited by the improvement, or was assessed too high, or that the improvement was not practicable, or would not be a public utility or convenience.

■ A trial in the appellate court *de novo* presupposes a previous trial in a tribunal having jurisdiction of the subject matter of the cause, from which the appeal has been taken. And it follows that if the inferior court, in which the case was tried, was without jurisdiction, "an appeal from its decision confers no jurisdiction upon the appellate court." 3 C. J., § 123, Appeal and Error.

■■ Now, recurring to the adequacy of the notice. We have carefully analyzed the contents of this paper, and we are convinced that it is sufficient within the purview of the statute. As measured by statutory requirements, the notice is valid. For a description of the proposed improvement, the court, by order published in the newspapers and posted at each terminus of the proposed improvement, specifically referred to the plans, specifications and estimates theretofore filed by the county surveyor with the county clerk; and the portions of the complaint hereinbefore set out, together with the notice, show that, by these records on file with the county clerk, the boundaries of the district are clearly described. In truth, not only was the notice complete, but it likewise contained surplus matter. The last paragraph thereof, referring to the right of remonstrators, is purely surplusage. In establishing public highways, or in providing for improvements by special taxation in road assessment districts, it is unnecessary to set out in the notice the legal right of the owner of the property to remonstrate or file claim for damages. This right is determined by operation of law. That the notice in this case was sufficient with reference to the description of the proposed improvement, see *Ladd* v. *Spencer,* 23 Or. 193 (31 Pac. 474); *Clinton* v. *City of Portland,* 26 Or. 410 (38 Pac. 407); *Rubin* v. *City of Salem,* 58 Or. 91 (112 Pac. 713); *Rogers* v. *City of Salem,* 61 Or. 321 (122 Pac. 308).

■ The plaintiffs refer to the state constitutional provisions relating to the power of eminent domain. Eminent domain is the power inherent in a sovereign state of taking or of authorizing the taking of any property within its jurisdiction for a public use or

benefit: *Bridal Veil Lumbering Co.* v. *Johnson,* 30 Or. 205 (46 Pac. 790, 60 Am. St. Rep. 818, 34 L. R. A. 368); 1 Nichols on Eminent Domain, 1.

But the complaint states no facts which would indicate that such additional burden has been imposed upon their property as would entitle them to the protection of the constitutional provisions limiting the right of eminent domain.

Again, we direct special attention to the excerpts from the plaintiffs' complaint set out in our statement herein, together with a quotation from plaintiffs' brief appearing at the commencement of our opinion. We cannot close our eyes to plaintiffs' averments and statements. In view of the allegations of the complaint, there is no question but what plaintiffs received full statutory notice. Was that notice a compliance with the fundamental law of the land? That the statute involved is constitutional, see the original decision of this case, reported in 123 Or. 345 (262 Pac. 248), where Mr. Justice ROSSMAN, in a well-reasoned opinion on that subject, upheld the statute in question. However, we are of opinion that the holding in that case that the notice to plaintiffs was insufficient is erroneous. Hence the former opinion should be reversed and set aside as to that holding, and the decree of the lower court affirmed. It is so ordered.           AFFIRMED.

BEAN and COSHOW, JJ., not sitting.

ROSSMAN, J., Dissenting.—Upon rehearing the respondents stress the fact that the appellants have not contended that the county officials failed to comply with those portions of the statute, 1913 Session Laws, Chapter 89, which provide for notice to the

property owner; but frankly conceded that "the sole point for consideration by this court * * is whether or not the assessment road district is unconstitutional." We were aware of this when the previous decision was prepared. However, all of the facts were before us, and could not be altered. The complaint set forth the efforts advanced by the defendants in an endeavor to comply with the statute; it reproduced the notice that was posted and published. When we came to the conclusion that the efforts of the defendants failed to afford to the property owner reasonable notice, our departure from the plaintiffs' concession under the circumstances could not have improperly prejudiced the defendants. Our previous decision placed a construction upon those portions of the act which make provision for notice that differed from the interpretation of the plaintiffs when they made their generous concession. This being true it would be as improper for the court to hold the plaintiffs to their concession as for a litigant to take a similarly unfair advantage of his opponent.

The doctrine of the theory of the case, invoked by the defendants, has no application to this suit. That rule of practice generally comes into operation only during the presentation of the evidence; it prevents a party from disassociating himself from his attitude concerning some disputed fact, when by his statement, or by some other means, which disclosed his attitude, he induced his opponent to forego proof until it was too late. But, in the present suit, we have not yet come to the time when the proof is being offered; the suit is before us on a demurrer. There can exist no reason whatever for applying at this time that rule. Bearing in mind, as we must, that an un-

warranted application of the theory of the case rule, would blindfold needlessly the eyes of the court to the real facts, it will be readily perceived that this rule of practice should never be employed except in those instances where the opponent would be improperly prejudiced if the proponent were permitted to shift his theory concerning the fact. It is certain, that the defendants will suffer no improper disadvantage if the court deals with the facts as they really are.

However, the entire matter is before us once more. The plaintiffs again contend that the statute trespasses upon constitutional provisions that are intended to safeguard the citizen in the possession of his property; particularly they assail the act for its alleged conflict with those principles of constitutional law which require reasonable notice before the state may invade a property right. Since the defendants earnestly contend for the opposite conclusion, we have once more assigned ourselves to a full consideration of the matter in issue; but, shall confine this decision solely to a consideration of the validity of the act.

In proceeding, let us bear in mind that the plaintiffs allege and the defendants admit that the former received no notice before their property was subjected to the assessment liens. The plaintiffs particularly contend that when the assessment road district act is fully complied with, the notice yielded is inadequate to meet constitutional requirements. The sufficiency of the notice authorized by the act must be determined by what the act directs shall be published and posted. In *Paulsen* v. *Portland,* 149 U. S. 30, the federal Supreme Court held that although the charter provision, which constituted the subject mat-

ter of that suit contained no provision for giving notice to property owners in sewer assessment matters, yet by necessary implication it conferred authority upon the city council to give such notice whenever it proceeded to assess property. This was in affirmance of *Paulsen* v. *Portland,* 16 Or. 450 (19 Pac. 450, 1 L. R. A. 673). To similar effect see *Shannon* v. *Portland,* 38 Or. 382 (62 Pac. 50), and *Sullivan* v. *Cline,* 33 Or. 260 (54 Pac. 154). However, the type of statute which receives such treatment by the courts, never undertakes to define the notice which shall be given. To do so would negative any implication that the lesser legislative body should specify the character of notice. Then also, in the foregoing type of cases the authority is conferred upon some governmental body which possesses legislative powers, as for instance the city council. Being possessed of such powers, it may properly specify the character of notice needed to acquaint the property owner with the pending assessment. The act now before us specifically points out what notice shall be given, and confers the authority to construct the improvement upon the Board of County Commissioners; our Constitution confers no legislative powers upon this board: Or. Const., Art. VII, § 12. Due to these circumstances, when we endeavor to determine whether the county board is authorized to supply reasonable notice, we must confine our search exclusively to the statute. And as is suggested by Elliott on Roads & Streets (4 ed.), Section 222, "a notice not provided by law is in truth no notice at all."

Sections 6 and 7 are the only portions of the act which define the notice which shall be given. Let us pause here for a moment, and remind ourselves, that

this act has a double aspect. First, it grants authority to construct, pave and repair roads; second, it grants authority to assess against the property the cost of the construction of the improvement. The latter authority necessitates that the proceedings authorized by the act shall be classified as *in invitum,* for the exercise of the authority conferred may cause those affected to be ultimately deprived of their property. Since the proceedings are of this character, the language of the act should be strictly construed.

Now, reverting to Sections 6 and 7 we find that the information which shall be posted and published is "the order of the County Court declaring its purpose to construct the improvement." Here it will be helpful to review briefly the preceding sections so as to become better acquainted with the probable contents of the order just referred to. Section 1 limits the application of the act to counties with a population of 150,000 or over. Upon the County Courts of such counties the act confers the authority to create assessment road districts, and to repair and improve the roads within the district. Section 2 provides that the County Court is the official body which shall have the power to establish the road district "and define the boundaries thereof," limited, however, by the condition that the "district shall not exceed one mile in width on either side of the center line of an established county road." Having created the district and prescribed its boundaries, the County Court shall cause maps and plats of said assessment road district to be prepared, showing its length and width, and as near as possible the several tracts of land therein, and the number of acres contained in each tract, and the names of the respective owners thereof.

Section 3 confers power upon the County Court to determine the character and extent of the improvement, and to levy an assessment upon all lands within the district benefited by it so as to defray the costs thereof. Section 4 provides that whenever the County Court shall deem it expedient to repair or improve any road within the district, it shall require from the county surveyor, plans and specifications of the proposed improvement, and an estimate of the work to be done and the probable cost thereof. When this official has completed his data, he is required to file the same with the county clerk. Now we come to the order which Sections 6 and 7 require shall be posted and published as the only notice which the act affords to the property owner. It will be observed that the act requires no notice to the property owner before the assessment road district is created; the County Court may create such a district upon its own initiative. The act does not contemplate that when a district has been created, notice shall be published concerning that fact. Indeed, one might reside in a district for several years' time without being aware of that fact. And the board is not required to give notice before it determines the necessity of the construction, alteration or repair of a road. When it has received from the county surveyor the plans, specifications and estimates relating to the contemplated improvement, the board is required to file these documents with the county clerk. A similar provision is conspicuously absent in regard to the maps and plats showing the boundaries of the district. However, when the board has assembled its data consisting of plans, specifications and estimates of the cost of the proposed improvement, and finds it advisable to pro-

ceed with its construction, Section 4 requires that it shall prepare the order, which in turn becomes the sole notice to the property owner when it is posted and published pursuant to Sections 6 and 7. The only portion of Section 4 which defines the contents of the order is as follows: "If the county court shall find such plans, specifications and estimates to be satisfactory, it shall approve the same and shall thereupon, by order entered upon the journals of the county court, declare its purpose in making said repairs or improvement." Section 26 provides that all assessment road districts should be numbered and should be referred to in all proceedings by their number; hence, we assume that the order should bear the number of the district. We now have become acquainted with the contents of the order. Sections 6 and 7 as we have said before, require that this order shall be posted and published, and it thereupon becomes the only notice which the act furnishes to the property owner. Thus Section 6 provides: "The order of the county court declaring its purpose in making such improvement shall be published for five consecutive publications once each week in a newspaper * * " Section 7 provides: "The county surveyor within five days from the publication of said order, shall cause to be conspicuously posted at each end of the line of the contemplated improvement a notice * * . Said notice shall contain in legible characters a copy of the order of the county court." In view of the use which we expect to make of them we shall now briefly review Sections 8, 9 and 23 of the act. Section 8 provides that within twenty days from the date of the first publication of the notice, the owners of 51 per cent or more in area of the prop-

erty may file with the county clerk a remonstrance against the proposed improvement; thus the final two publications of the order occur too late to be of any service. Section 9 provides, that if no such remonstrance shall be filed within the time designated, the County Court shall be deemed to have acquired jurisdiction and order that the improvement be made. Section 23 makes provision that any person who filed a remonstrance shall be allowed an appeal to the Circuit Court. The other sections of the act make provision for the appointment of appraisers, the letting of the contract, payment of the contractor, the issuance of certificates in the nature of bonds, etc. Since they are of no consequence to the problem pending before us, we shall refer to them no further.

The question submitted for our solution, therefore, is, is this notice sufficient to satisfy the requirements of due process of law? It has been observed that although Section 6 requires that the notice shall be published for five consecutive publications, once each week, only three publications appear before the time for filing remonstrances has expired. The other two publications do not appear until after the time for objecting has expired. Hence, the only notice to the property owner is a copy of the order of the county commissioners, posted at each end of the line of the contemplated improvement for fifteen days and the publication of the same three times in a newspaper. It should also be borne in mind, that property a mile distant from the road may be included within the district and required to contribute towards the cost of the improvement. We remind ourselves that the plaintiffs allege and the defendants, by demurring, admit that none of the plaintiffs had any notice of the

assessments, or of any of the proceedings, whereby the assessments were created.

The requirement that one whose property may become encumbered with an assessment lien shall have reasonable notice was never intended to invoke a mere idle ceremony; nor was it intended to create a bare technicality easily satisfied with any sop fashioned by legislative fiat. But, this wholesome constitutional demand which holds as naught the result of a proceeding which was not preceded by reasonable notice, is of the very essence of our scheme of jurisprudence, our government, as Webster well said in his argument in the Dartmouth College Case, assures procedure which hears before it condemns, which proceeds on inquiry and renders judgment only after trial. This safeguard is not cast into the discard merely because the citizen is espousing a cause which protects his property against an assessment. Thus the New York Court of Appeals in *Stuart* v. *Palmer*, 74 N. Y. 183 (30 Am. Rep. 289), expressed the law in the following language which has been much quoted: "It is not enough that the owners chance to have notice, or that they may, as a matter of favor, have a hearing. The law must require notice to them, and give them the right to a hearing and the opportunity of being heard." In Dillon on Municipal Corporations (5 ed.), Section 1365, we find:

"When, however, a special assessment is levied on property not specifically, but according to its value or the benefit derived from the improvement, to be ascertained by assessors appointed for that purpose upon such evidence as they may obtain, the officers, in estimating the value act judicially, and of such proceedings a property owner must, before

his property can be sold, have notice, either actual or constructive.''

Now let us ascertain whether this statute provided sufficient notice so that this element of due process was provided for. We have observed that Section 6 provides for five consecutive publications of the court's order. But we have seen that the time for filing remonstrances expires before the fourth publication appears. Without doubt this peculiar situation is the result of some error in calculation upon the part of the author of the act. But the very fact that the act requires that the notice shall be published five times indicates that the legislature felt that a fewer number of times would be inadequate to afford notice. Since the legislature apparently felt that five publications were necessary, we fail to understand how we would be justified in holding that three publications only served the purpose of affording to the property owners reasonable notice, especially in view of the fact that the plaintiffs, intelligent members of the community, knew nothing of the proceedings. It is held generally that publication of a notice for a less number of times than is required by statute is insufficient: Page & Jones, Taxation by Assessment, § 763. Such being the condition of the law, it would seem as though this court is required to hold that when the legislature deemed five publications necessary, three were insufficient.

But there is a further objection to the notice provided for by the act. We believe it follows from the requirement that all orders should refer to the district by number, that the legislature intended that the notice published and posted should make no express reference to the boundaries of the district, or the

property located within it. The notice which was published does not state what property is included within the district; it in no manner mentions the boundaries of the district. The caption of the act in the sixth line contains these words: "Being assessment road district No. 2." The order does not refer to any map, nor state that there is a map of the district on file in any office. The ordinary individual could hardly be expected to know that assessment road district No. 2 had been created by an order of the board of county commissioners. The state, the federal government, and the municipalities have created many bodies and commissions. The average citizen would not know from the information contained within the words "assessment road district No. 2," whether the legislature had fashioned this entity, or which one of these numerous commissions had bestowed this new handiwork upon him. Much less does the act contemplate that the notice shall contain information advising him whether his property is included in the district. Since the act does not direct that the boundaries of the district shall be referred to, but contemplates that reference to the district number shall be sufficient, and since the act does not require that the notice shall contain information where the boundaries of the district may be ascertained, we feel that the published notice was insufficient. We have searched the authorities diligently and have failed to find any that uphold this loose requirement of the act. Upon the other hand the following adjudicated cases are in accord with our views. In *Flynn* v. *Chiappari*, 191 Cal. 139 (215 Pac. 682), the court had before it an act similar to the one before us. Much of the decision is given over to

a discussion as to whether the notice that was published was sufficient. We quote from the decision as follows:

"Where, as here, the determination of the property to be charted and the benefits to accrue thereto is committed to an administrative board, due process requires that the property owners affected thereby shall be given adequate notice and an opportunity to be heard on both these questions. (*Brookes* v. *City of Oakland,* 160 Cal. 423 (117 Pac. 433); *People* v. *Van Nuys Lighting Dist.,* 173 Cal. 792 (Ann. Cas. 1918D, 253, 162 Pac. 97).) No such notice was given in this case. The Board of public works adopted a resolution describing the property to be charged which was spread upon its own records, and a map showing the location thereof which remained in its own files. Its resolution of intention, which was posted in its office and published, not only failed to describe any property to be charged, but it contained no hint or suggestion that any property would be charged other than that chargeable under the front-foot rule. Notices were posted along the line of the improvement and in front of the quarter blocks in which appellants' property is situate. But they merely contained a brief description of the proposed improvement and a reference to the resolution of intention for further particulars. If appellants, seeing those notices, had been led thereby to examine the resolution of intention, they would have found therein a description of the proposed improvement, but no reference to any property to be charged therefor. They would thus naturally conclude that the assessment was to be made by the front-foot method, and knowing that their property did not front upon the improvement, or upon a quarter block cornering thereon, they would rest assured that it was not to be charged.

"In the absence of any predetermined rule established by legislative authority (such as the front-foot

rule), whereby the property to be charged can be ascertained, the notice must, if not directly, at least by adequate reference, describe the property to be charged, in order that the property owners affected thereby may be accorded a real opportunity to be heard. (*Anaheim Sugar Co.* v. *County of Orange*, 181 Cal. 212 (183 Pac. 809); *People* v. *Lake Co. Water Dist.*, 183 Cal. 137 (190 Pac. 630).) The mere fact that the records and files of the board of public works contained such description and that they were open to inspection by the public in no way cures this omission (*Anaheim Sugar Co.* v. *County of Orange*, 181 Cal. 224 (183 Pac. 809).)''

In *Thayer Lumber Co.* v. *City of Muskegon,* 152 Mich. 59 (115 N. W. 957), the council of the city created a special sewer district designated as ''special sewer district No. 7,'' and described with particularity the lands constituting this district, including those of the plaintiff. The resolution declared the necessity of constructing some sanitary sewers to be paid for partly by special assessment. Thereafter, a notice was published which the city depended upon as the foundation for its assessments. This notice stated, that in the office of the recorder there was on file a plat of the sewer district showing the streets, lots and subdivisions constituting assessment district No. 7. The court held the notice insufficient. We quote from the decision as follows:

''Where notice is required to be given, it is imperative that such notice, when brought to the attention of any person interested, shall apprise him at least of the approximate location of the proposed improvement, and of the property to be assessed therefor. This notice contained no such information. From reading it no person could ascertain in what part of the city the proposed sewers were to be built,

and much less whether or not his property was liable to be assessed therefor. As was said in *Auditor General* v. *Calkins*, 136 Mich. 1, 4 (98 N. W. 743): 'It was obligatory upon the common council to give the notice required as a condition precedent to further action. The notice is in the nature of a summons to bring a defendant into court. Its object is to summon the interested taxpayers before the council, and give them a hearing. The notice must give the time required by the law, the proposed improvement, and the district to be assessed therefor, or else the council obtain no jurisdiction, any more than a court would obtain jurisdiction by a void service of process. The council in the inception obtained no jurisdiction on account of a void notice.' "

In *St. Louis* v. *Brinckwirth*, 204 Mo. 280 (102 S. W. 1091), the notice that was published referred to two alleys, but failed to state which of the two the city proposed to improve. It was held that this notice was insufficient.

In *Hallett* v. *United States Security Bond Co.*, 40 Colo. 281 (90 Pac. 683), the court said:

"In giving notice to property owners to construct, or in respect to, a local improvement, in so far as description of property is concerned, it is sufficient if, from such notice, it can be said that the lot owners were advised that their property would be affected by the proceedings to which the notice referred. The notices in the case at bar were addressed to 'The property owners in West Denver Sidewalk District No. 6.' Therein the district was described with reference to streets. This was sufficient to advise all persons owning lots within the territory thereby described of the proceedings involved."

In Page & Jones on Taxation by Assessment, Section 750, the writer states the notice of intention to assess must set forth the proposed improvement and

the assessment district. We believe that this court in the past has adhered to the principles of law expressed in the foregoing cases.

In *Fry* v. *City of Salem,* 84 Or. 184 (164 Pac. 715), the notice of intention to improve a street stated: "Notice is hereby given that the common council * * deems it expedient and proposes to improve South High Street from * * to * * at the expense of the adjacent and abutting property within said limits, in accordance with the plans, * * '' but failed to designate the boundaries of the district. It was held that the notice did not constitute a valid foundation for the assessment charges. In so holding this court among other expressions said: "The plans and specifications were not referred to in the notice as a part of the description of the street nor for the purpose of aiding the property owners in determining the property to be affected by the improvement."

In *Rogers* v. *City of Salem,* 61 Or. 321 (122 Pac. 308), the notice stated the intention of the city to construct a sewerage system for North Salem "at the expense of the property owners within the limits of said district, to be known as the North Salem sewer * * the boundaries of which are more particularly mentioned and described in said plans and specifications which are hereby referred to the same as if fully written herein, and on file at the office of the city recorder." It was held that this notice was sufficient because it referred to a map and directed the inquirer to an office where the necessary information could be obtained.

In *Jones* v. *City of Salem,* 63 Or. 126 (123 Pac. 1096), the importance of supplying the property owner with adequate information to enable him to

determine whether his property lay within the assessment district was deemed so important that the proceedings were held invalid because the map to which the notice referred was inaccurate and incomplete. To overcome this defect the city then argued that "the assessment-roll could be taken to determine the drainage district." But the court answered this contention by saying: "The assessment-roll, however, is not referred to in either of the notices. It is clear from the whole record that interested parties would have had to seek information other than that contained in the notice, and in the records referred to therein, in order to ascertain whether or not their property was intended to be taxed."

In *Thurber* v. *McMinnville*, 63 Or. 410 (128 Pac. 43), an election was held to annex to the city an outlying district. The vote was favorable, and subsequently the city attempted to levy a tax upon the annexed property. The plaintiff contested the tax, alleging among other things the insufficiency of a published notice. Omitting formal matters and portions immaterial to our purpose, the notice reads: "For amending section 2 of the Charter of the city of McMinnville, in Yamhill County, Oregon, and to extend the boundaries of said city as per the petition of residents of the proposed annexed territory." It was held this notice was insufficient. This court, speaking through Mr. Justice McBride, said:

"This, in effect, disposes of the case; but, as the proceeding to annex the territory in question is likely to be again attempted, we deem it proper to say that in our opinion the notices given of the special election were insufficient. They do not describe the property to be acquired, nor refer to any petition on file where such information can be obtained. Had

the notices, in addition to what is stated, added the words 'in accordance with a petition now on file in the office of the recorder of the city of McMinnville,' it would have rendered the notice certain, as in such case the voter would have been directed to the place where the document was on file, from which document he could obtain specific information. Such a notice has been held sufficient by this court in several cases, although, for the sake of certainty, it is, perhaps, better in many instances to include a complete description in the notice. In matters of this magnitude the small sum expended in the publication of a sufficient and complete notice is money well spent.''

To the same effect, see *Couch* v. *Marvin,* 67 Or. 341 (136 Pac. 6).

The courts have avoided the formulation of rules whereby it may be determined in advance what notices comply with the requirements of due process. Nevertheless they have not hesitated to set aside proceedings founded upon inadequate notice; see, for example, *Roller* v. *Holly,* 176 U. S. 398 (44 L. Ed. 520, 20 Sup. Ct. Rep. 410). It will be seen from the review which we have made of the foregoing cases that in the only instance in which the property owners were cited under a district number, the proceedings were condemned as founded upon inadequate notice. It will be further observed that in all of the cases it was held that the notice must mention the property affected by specifying the boundaries in some intelligible manner, or by making specific reference to a document, and the office where the same is on file, so that those interested may obtain the desired information. This state of the law proscribes the notice before us; but, reason deals with it as harshly as the precedents. For it is disingenuous to charge the property owner under the vague reference of

Assessment Road District No. 2, when he had no opportunity to participate in the formation of the district and was unaware of the existence of such an entity. Water-mains, fire hydrants, ornamental lighting equipment, street pavements, street flushing, sewers, street widenings, and a variety of other so-called improvements are being conferred upon the municipality by city councils and boards of county commissioners by virtue of the power of special assessments. A casual examination of almost any abstract of title will reveal a considerable list of such improvements bestowed, and the special assessment which followed in their wake. In the event we should uphold the special assessment now before us, it would mean that all of these tax levying bodies would be relieved from the necessity of being specific, and could notify the full range of mankind under their jurisdiction by the use of a handy numeral, or perchance, by an alphabet. And thus a constitutional provision, intended to act as a shield, and which was, indeed, one of the distinguishing symbols of enlightened government, would be pierced, and remain only as a mockery. We conclude that the notice provided for by the statute was not in conformity with the demands of due process of law.

In our previous decision we felt that the board of county commissioners could so shape its order as to comply with constitutional requirement, but upon re-investigation we believe that this would require the board to exercise authority which the legislature has not conferred upon it. We are therefore drawn to the conclusion that the court should withhold from the act its judicial recognition. There

remains nothing to be done but to adhere to our former conclusion that the lower court erred when it sustained the demurrer.