Argued December 2, reversed December 20, 1927.

## ELLEN MacVEAGH ET AL. *v.* MULTNOMAH COUNTY ET AL.

### (262 Pac. 248.)

**Statutes — Court Should not Presume That Legislature Intended Useless Act Should be Done.**

1. A court should never presume that the legislature intended that a useless act should be done.

**Constitutional Law — Highways — Statute Relating to Assessment Road Districts Held not Violation of Due Process in Failing to Provide Notice and Opportunity for Hearing (Or. L., §§ 4652–4679).**

2. Laws of 1913, page 146, constituting Sections 4652–4679, Or. L., relating to assessment road districts, *held* not to violate due process clause in failing to provide for notice to property owners within district, or to provide them an opportunity for a hearing should they protest.

**Highways — Notice of Improvement in Assessment Road District, Failing to State Boundaries of District, or to Refer to Map or Plat, or Right of All Property Owners to Object Held Insufficient (Laws 1913, p. 147, §§ 6, 7).**

3. Notice published pursuant to Laws of 1913, page 146, Sections 6, 7, as to improvement in assessment road district, which failed to state boundaries of the district or to refer to plat or map, where such information could be obtained, and failed to state that all persons owning property may object, *held* insufficient.

---

Constitutional Law, 12 C. J., p. 787, n. 83, 96, p. 788, n. 99, p. 791, n. 19, p. 798, n. 56, p. 799, n 60, p. 1261, n. 89, p. 1262, n. 93, 99, p. 1263, n. 12.

Highways, 29 C. J., p. 742, n. 45, p. 746, n. 17.

2. What is due process of law, see notes in 24 Am. Dec. 538; 20 Am. St. Rep. 554; 122 Am. St. Rep. 904. See, also, 2 R. C. L. 434, 446; 25 R. C. L. 159.

From Multnomah: John H. Stevenson, Judge.

Department 1.

Reversed.

For appellant there was a brief and oral argument by *Mr. Rogers MacVeagh.*

For respondents there was a brief over the names of *Mr. Stanley Myers,* District Attorney, and *Mr. W. L. Brewster,* with an oral argument by *Mr. Jay Stockman,* Deputy District Attorney.

ROSSMAN, J.—This suit attacks the validity of Chapter 89, Session Laws of 1913, which constitutes Sections 4652 to 4680, Or. L. The basis of the attack is the charge made by the plaintiffs that the act violates the due process clause of the Constitution; more specifically stated the plaintiffs charge that while the act empowers County Courts to levy assessments against property within the districts formed pursuant to authority granted by it, it fails to make provision for notice to the property owner within the district and fails to provide him an opportunity for a hearing should he protest. Plaintiffs further contend that in the event the act can be construed so that it makes provision for both, it gives the right of protest only to those who own 51 per cent, or more, in area of property within the district. No serious problems of law are involved; the parties differ only upon the construction of the act.

In some particulars the act is deserving of much of the criticism directed against it in the very able brief of counsel for the plaintiffs, yet the act should not be condemned if it offends only against the well-established rules of rhetoric; it is only in the event

the legislature has commanded something should be done which the Constitution prohibits that we should pronounce the act invalid. This legislative enactment was upon our statute books for thirteen years before this suit was instituted. The parties inform us that under its provisions, five assessment road districts have been formed. Since it provides for the issuance of certificates of indebtedness secured by the property within the district and payable over a course of ten years, it will be seen that any disposition made of this suit which declares the act invalid may affect numerous individuals in a substantial manner. But more important than this, the fact that five road districts have been formed under its provisions is evidence that the act is capable of practical application, and that officers whose duty it was to administer it have placed upon it a construction which, in the opinion of those concerned, was in harmony with constitutional rights.

In approaching our problem we find upon the one side looseness of expression; on the other, a strong presumption that the act is constitutional, and a rule of construction which commands us to uphold the validity of· the act if it is fairly capable of a construction in harmony with the Constitution. As one reads the act, the observation readily comes to him that its author evidently arranged the various subdivisions which enjoin the performance of duties by county officials in the order in which he intended that those duties should be performed. Having this in mind he provided in the first section of the act that the board of county commissioners in certain counties might create assessment road districts. The next four sections set forth what should be done by the county commissioners when they contemplate

the formation of such a district. Thus it is provided that the county commissioners should prepare maps and plats of the assessment road district, showing as nearly as possible the various tracts included within the district, the number of acres contained in each tract, and the names of the respective owners. Likewise the act makes it the duty of the county surveyor to prepare an estimate of the work, its probable cost and plans and specifications of the proposed improvement; all of this must be filed in appropriate county offices. Undoubtedly the purpose of requiring this information to be filed is to render it available to those whose property may be assessed; thus they may determine for themselves whether they will approve of the project or remonstrate. When the foregoing data has been collected, the County Court is required to take action; should it approve the project, it must enter an order to that effect upon its journal. Within thirty days from that day it must appoint appraisers.

1. The foregoing is a brief summary of the first five sections of the act. Section 6 requires the County Court to publish its declaratory order for five successive weeks, and Section 7 makes it the duty of the county surveyor to post a copy of the foregoing order at each end of the line of the contemplated improvement. Counsel for the plaintiffs contend that since Sections 6 and 7 do not definitely state when the foregoing order is to be published and posted, it is possible that the officials charged with those duties might publish and post them at a time either too early or too late in the chain of events to be of any service to the owners of property within the district. Should we adopt the construction suggested by the plaintiffs, the provision for publication would

be vain, but a court should never presume that the legislature intended that a useless act should be done. We have observed before that the different sections of the act are arranged in the same order in which such ministerial acts are generally performed; in fact, in that natural order in which a fair-minded, competent, public official would be likely to perform similar duties, even though he had no legislative instructions to guide him. Hence, one may well believe that the legislature intended that the notices should be published and posted after the data had been compiled and filed in the public offices where those interested might have access to it after reading the notices. This construction is reinforced by the fact that subsequent sections of the act defer final confirmation of the appraiser's report, and the execution of a contract for the construction of the improvement until the sections which we have just mentioned make provisions for notice, and another section makes provision for the filing of remonstrances. Then, also, Section 11 provides that when the assessments have been confirmed, the lien shall relate back and bind the property from the time of the publication of the first notice. This would be manifestly unfair, if at the time of the publication all of the data, plans, specifications, estimates, probable cost and appraisers' report had not been filed. We are therefore of the opinion that the proper construction of these provisions of the act is that publication follows, but does not precede the acts required in the first five sections.

We are of the opinion that Section 23 gives the right of an appeal as the terms of the sections state, to "any person or corporation who appeared and filed a remonstrance," and that upon the appeal he

may have the privilege of offering proof in regard to all the matters specified in the section. In other words, the act grants him an appeal, not a mere writ of review.

The contents of the notice which Sections 6 and 7 require to be published and posted are the order of the County Court approving the project and declaring its purpose to proceed with its execution. Since this order, upon publication and posting, becomes notice to the owners of property within the district that their property will be called upon to bear all or at least a part of the cost of the improvement, it must of necessity state the fact that remonstrances and objections may be filed and the day when the right to do so expires. From the very nature of the matter disposed of by the order the road to be improved or repaired must be named; thus in the present case, both the caption of the notice and the body states that the county commissioners propose to improve Greenleaf and Warrens Avenues within Green Hills. The contents of the order further inform the property owner that the board proposes to improve that portion of these roads between road stations 987 and 2800. Having used thus the neighborhood name of the roads and added the descriptive matter, "within Green Hills," the owner of property in their general vicinity to whose attention the notice comes cannot fail to observe that this matter concerns him. In this respect the matter before us is quite similar to that approved by this court in *Bank of Columbia* v. *Portland,* 41 Or. 1 (67 Pac. 1112). Likewise the nature of the matter disposed of by the order must refer to the assessment road district previously tentatively created. In the present case the caption of the order bears the words,

"Assessment Road District," and the same words appear a sufficient number of times in the main part of the order so that any reasonably intelligent person reading it would be informed that an assessment road district had been created to bear the cost of the improvement according to plans, specifications and estimates which have been approved by the county commissioners. It was not necessary in the absence of legislative requirement to notify those within the proposed district of the proceedings to determine the boundaries of the district: Page and Jones, Taxation by Assessment, § 743. But we believe that the order should have set forth the boundaries of the district, or referred to a plat or map, and the county office where the same was on file from which such information could be obtained: *Rogers* v. *City of Salem,* 61 Or. 321 (122 Pac. 308); *Thayer Lumber Co.* v. *City of Muskegon,* 152 Mich. 59 (115 N. W. 95). Where the notice complies with all the other requirements of the law, it is not necessary that it should set forth that the property within the district will be assessed and required to pay the cost of the improvement, unless the law permits funds raised generally to be used in payment of the expenses entailed in the prosecution of the improvement. This is nicely illustrated in the two cases of *Scott* v. *City of Toledo,* 36 Fed. 385 (1 L. R. A. 688); *Beaumont* v. *Wilkes Barre City,* 142 Pa. 198 (21 Atl. 888). The act now before us permits the county board, in the event it finds that the improvement will be one of great public utility, to defray not more than 60 per cent of the cost of the improvement through the use of the county's general funds: it necessarily follows therefrom that in all cases an assessment will be payable by owners of property within the district, and that

in many if not most cases the entire cost must be borne by the property within the district.

2, 3. Having taken this view of the matter we believe that the act does not violate constitutional rights; but we believe that the notice published was insufficient. It fails to state the boundaries of the district, or refer to some plat or map where that information could be obtained. Further, while the notice published states that the owners of 51 per cent or more in area of property may file a written remonstrance, it fails to state that all owning property within the district may object; the remonstrance of the former terminates the action of the board, but the objections of the latter, when not adhered to, give to the objector an appeal and a hearing in the Circuit Court.

It follows from the foregoing that the decree of the lower court sustaining a demurrer to the complaint will be reversed; the plaintiffs may have their costs.       REVERSED.

RAND, C. J., and COSHOW and McBRIDE, JJ., concur.