Argued and submitted February 25, decision of Court of Appeals reversed;
OARs 291-024-0017, 291-024-0020, 291-024-0065, 291-024-0070, and
291-024-0080 declared invalid to the extent stated in opinion July 22, 1999

OREGON NEWSPAPER PUBLISHERS
ASSOCIATION,
a not for profit association,
J. Leroy Yorgason, its President;
Willamette Valley Chapter of
Society of Professional Journalists,
a not for profit society of journalists,
Rob Priewe, chapter President;
The Associated Press,
a not for profit news cooperative,
Elaine Norton Hooker,
its Chief of Bureau for Portland, Oregon;
The Oregonian Publishing Company,
an Oregon Corporation;
The Oregon Association of Broadcasters,
a non-profit association,
Bill Johnstone, its executive director;
The Statesman Journal, a daily newspaper
published in Salem, Oregon,
and Julia Wallace, its Executive Editor,
*Petitioners on Review,*

*v.*

OREGON DEPARTMENT OF CORRECTIONS
and State of Oregon,
*Respondents on Review.*

(CA A97110; SC S45795)

988 P2d 359

Les Swanson, Jr., Portland, argued the cause and filed the briefs for petitioners on review.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause and filed the briefs for respondents on review. With him on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Leeson, and Riggs, Justices.**

GILLETTE, J.

---

** Kulongoski, J., did not participate in the consideration or decision of this case.

## GILLETTE, J.

This is a proceeding under ORS 183.400[1] for judicial determination of the validity of a series of rules promulgated by the respondent Oregon Department of Corrections (DOC).[2] The rules impose various conditions and restrictions on persons who witness executions of sentences of death that DOC carries out. Petitioners assert that the rules are invalid on various statutory and constitutional grounds. The Court of Appeals upheld the rules. *Oregon Newspaper Publishers v. Dept. of Corrections*, 156 Or App 30, 966 P2d 819 (1998). We allowed review and now reverse the decision of the Court of Appeals.

■ We note at the outset the particular nature of the judicial review that we are conducting. Except for procedural issues not involved in the present case, the scope of judicial review under ORS 183.400 is limited. The reviewing court examines the challenged rules only to determine whether those rules on their face comply with applicable constitutional and statutory requirements. If the rules comply, then

---

[1] ORS 183.400 provides, in part:

"(1) The validity of any rule may be determined upon a petition by any person * * * in the manner provided for review of orders in contested cases. The court shall have jurisdiction to review the validity of the rule whether or not the petitioner has first requested the agency to pass upon the validity of the rule in question, but not when the petitioner is a party to an order or a contested case in which the validity of the rule may be determined by a court.

"* * * * *

"(3) Judicial review of a rule shall be limited to an examination of:

"(a) The rule under review;

"(b) The statutory provisions authorizing the rule; and

"(c) Copies of all documents necessary to demonstrate compliance with applicable rulemaking procedures.

"(4) The court shall declare the rule invalid only if it finds that the rule:

"(a) Violates constitutional provisions;

"(b) Exceeds the statutory authority of the agency; or

"(c) Was adopted without compliance with applicable rulemaking procedures."

Petitioners meet the "any person" requirement for standing to seek review of the rule.

[2] Although the State of Oregon also was named a party respondent in this proceeding, DOC promulgated the rules in question. We therefore refer to respondents, both individually and collectively, as "DOC" throughout this opinion.

any further challenge to them must be made on an "as applied" basis. *See AFSCME Local 2623 v. Dept. of Corrections*, 315 Or 74, 79, 843 P2d 409 (1992) (so explaining in connection with judicial review under ORS 183.400 of another rule promulgated by DOC).

The rules in question are OAR 291-024-0017(2)(b), (c), and (e) (dealing with restrictions on and conditions with respect to access by witnesses invited to view executions); OAR 291-024-0020(3)(d)(D) (requiring witnesses to executions to sign and abide by agreement setting out restrictions and conditions in OAR 291-024-0017); OAR 291-024-0065 (providing for preparation of prisoner for execution and indicating that confidentiality of identity of persons participating in process will not be compromised); OAR 291-024-0070 (providing for escorting of witnesses to assigned area that apparently is screened from area in which prisoner is being prepared for execution); and OAR 291-024-0080 (providing that, at appointed time and after prisoner has been prepared, curtains shall be parted to permit witnesses to view only actual administration of lethal injection).[3] For purposes of analysis, the rules may be divided into two parts—those that deal with conditions of nondisclosure that are placed on witnesses to an execution (OAR 291-024-0020 and 291-024-0017) (the nondisclosure rules) and those that deal with the limited access that witnesses have to viewing the actual procedures by which the execution is carried out (OAR 291-024-0065, 291-024-0070, and 291-024-0080) (the access rules).

Petitioners present five legal challenges to some or all of the rules in question. One challenge is statutory; the balance are constitutional. In accordance with our preferred practice for dealing with legal challenges, we address the statutory issue first. *See, e.g., Leo v. Keisling*, 327 Or 556, 560, 964 P2d 1023 (1998) (so holding in invalidating an administrative rule).

Petitioners' statutory challenge arises under ORS 137.473. That statute provides, in part:

---

[3] The rules are too extensive to be set out *verbatim* here, but pertinent portions are quoted at the appropriate places in this opinion.

"(1) The punishment of death shall be inflicted by the intravenous administration of a lethal quantity of an ultra-short-acting barbiturate in combination with a chemical paralytic agent and potassium chloride or other equally effective substances sufficient to cause death. The judgment shall be executed by the superintendent of the Department of Corrections institution in which the execution takes place, or by the designee of that superintendent. All executions shall take place within the enclosure of a Department of Corrections institution designated by the Director of the Department of Corrections. The superintendent of the institution shall be present at the execution and shall invite the presence of one or more physicians, the Attorney General and the sheriff of the county in which the judgment was rendered. At the request of the [prisoner], the superintendent shall allow no more than two clergymen designated by the [prisoner] to be present at the execution. At the discretion of the superintendent, no more than five friends and relatives designated by the [prisoner] may be present at the execution. The superintendent shall allow the presence of any peace officers as the superintendent thinks expedient."

In addition to the superintendent (who must be present), the statute creates two classes of witnesses to an execution: (1) those who must be invited and who, therefore, are entitled to be present if they wish to be and (2) those who, at the discretion of the superintendent, may be present. The former class includes at least one physician, "no more than" two clergymen (if the prisoner asks for them), the Attorney General, and the sheriff of the county where the sentence of death was imposed. All those individuals must be invited by the superintendent, but their attendance is at their own discretion. The latter class consists of up to five friends and relatives of the prisoner and such peace officers "as the superintendent thinks expedient."

The nondisclosure rules do not distinguish between the foregoing classes of witnesses. OAR 291-024-0020(3)(d) provides, in part:

"(3) Invitation to Witness the Execution:

"* * * * *

"(d)   In order to enter the secure perimeter of the Penitentiary, all persons and [*sic*] witnessing the execution shall:

"* * * * *

"(D)   Sign and agree to abide by the terms of the witness access agreement, as provided in OAR 291-024-0017."

The cross-referenced rule, OAR 291-024-0017, provides, in part:

"(1)   Persons invited by the Superintendent of the Oregon State Penitentiary ('Penitentiary') who wish to attend and witness the execution of a Department inmate shall sign and strictly observe an access agreement drawn by the department that establishes the terms and conditions of access to the Penitentiary for the purpose of attending and witnessing the execution. * * *

"(2)   Terms and Conditions of Access: The witness access agreement shall specify, at a minimum, the following terms and conditions of access to the Penitentiary:

"* * * * *

"(b)   Covenant of Nondisclosure. In order to protect the safety and security of Department staff and other persons involved in the conduct of the execution and the supervision of the condemned inmate, and the safety and security of their families, and to protect the personal privacy interests of such persons and insure their anonymity, witnesses shall not disclose either directly or indirectly in any manner whatsoever the physical appearance, attributes, characteristics or any other fact that would have a tendency to reveal the identity of any person, excluding only the Superintendent, that is directly involved in the conduct of the execution or supervision of the condemned inmate, specifically including: (1) the executioner(s); (2) medical professionals and medically trained persons; and (3) Department security staff and supervisors, including special security team members, and correctional officers supervising the condemned inmate in the execution room cell (M1). The covenant of nondisclosure will not apply to any information now or hereafter voluntarily disseminated by the Superintendent or Department to the public, or which otherwise becomes part of the public domain through lawful means.

"(c)   Remedies. Witnesses shall agree that in the event that they disclose information in violation of the access agreement, the Department is entitled to specific performance, including immediate issuance of a temporary restraining order or preliminary injunction enforcing the access agreement, and to judgment for damages caused by the witness' breach, and to any other remedies provided by law.

"(d)   Special Terms and Conditions of Access Applicable to Media Witnesses. Media witnesses, in addition to observing the general terms and conditions of access and covenant of nondisclosure applicable to all witnesses, shall return to the [DOC] Media Center * * * at the Penitentiary immediately following the execution to brief those media representatives assembled regarding their observations of the execution and to answer the media representatives' questions. Media witnesses shall not file their own reports until after they have completed their responsibilities as pool reporters. Any media witness who fails to adhere to the terms and conditions of the access agreement may be barred from further access to the Penitentiary for purposes of attending, witnessing and reporting on executions. The Department may, in its discretion, also bar all other representatives of the media organization represented by the media witness."

The collective effect of the rules is to require all witnesses to agree, as a condition of attending the execution, that they will waive their rights to free expression respecting certain things that they might see and that they will be subject to injunction and may be required to respond in damages if they violate that agreement.

Petitioners argue that the nondisclosure rules exceed the statutory authority of DOC, because they place limits that the voters[4] did not authorize on the witnesses. They further argue that, by limiting what the witnesses see to those moments when the lethal injection actually is administered and performs its function, DOC is not permitting the witnesses to witness the entire execution: "[T]he statute requires that the execution, not just the dying, be

---

[1] ORS 137.473 was adopted by the people on November 6, 1984. Or Laws 1985, ch 3, § 7(1).

observed by the witnesses." We deal with each of those arguments in turn.

■        As noted, ORS 137.473 establishes two classes of witnesses to an execution, one of which is made up of persons who are entitled to be present if they wish to be. Petitioners argue that limiting the right of those persons who statutorily are entitled to be present by requiring them to sign the DOC nondisclosure agreement exceeds DOC's authority. DOC responds that the rules themselves establish that DOC has legitimate concerns for the privacy and safety of those involved in the execution process, so that its restrictions on all those who witness executions are proper.

The parties' disagreement, although fundamental, is narrow. Petitioners do not deny that DOC has the right to assure the security of the institution. For example, petitioners do not question the right of DOC to assure that all visitors—including those invited to witness an execution—do not bring contraband, weapons, or explosives into the institution. *See AFSCME*, 315 Or at 80-82 (recognizing DOC's authority in that respect). But petitioners do assert, *inter alia*, that the statute from which DOC derives its power to ensure security cannot be read so broadly as to grant DOC the right to interfere with the free expression rights of persons whom the voters have declared to be entitled to be present to witness an execution.

Petitioners' point is well taken. We recognize, as we did in *AFSCME*, that DOC is charged with duties involving the security and safety of its institutions and that those duties may permit it to limit the activities of persons on its premises in ways that the government generally could not limit activities outside a prison setting. But we find nothing in ORS 137.473 or in any of the other statutes from which DOC's authority arises that can be read so broadly as to permit DOC to condition a right to be present on a witness' willingness to waive that witness' free expression rights—not only while still inside the institution, but afterward. Such an authority is not stated and, given the nature of petitioners' free expression interests, we will not infer it. It follows that, to the extent that OAR 291-024-0020 and 291-024-0017 purport to place nondisclosure requirements on members of the

class of witnesses who may, at their own discretion, be present at the execution, those rules exceed the rulemaking authority granted to DOC by the legislature and, therefore, are invalid. ORS 183.400(4)(b).

This leaves the question whether the rules may be enforced against the class of witnesses that may be present only with the permission of the superintendent. We decline to answer that question in this case, because our holding already requires DOC to reconsider—and, possibly, abandon—the rules. If DOC cannot limit *all* witnesses in the way that it wishes to do, then it is not clear that it will attempt to limit only some of those witnesses in that way. Thus, a ruling by this court concerning the position of the remaining witnesses may be academic and can await a revision of the rules.

■    We turn to petitioners' second argument, *viz.*, that restricting what the witnesses see to the moments during which the lethal injection is administered and causes death does not permit them to witness the entire execution. The statute authorizes certain witnesses to be present at *"the execution."* (Emphasis added.) An "execution" is "a putting to death as a legal penalty: CAPITAL PUNISHMENT." *Webster's Third New Int'l Dictionary*, 794 (unabridged ed 1993).[5] That word, and the legislature's purpose in using it, are clear.[6]

■    The execution is the process of putting the prisoner to death. It follows that remote activities that precede that process, such as holding the prisoner in a special cell or giving the prisoner a special "last meal," are not a part of "the execution." On the other hand, it equally is clear that those actions that are linked inextricably with the administration of the fatal drugs are part of the execution. Those acts include connecting special monitoring equipment to the prisoner, placing the prisoner in restraints, and inserting a catheter that later will be used to administer the fatal drug. DOC's

---

[5] There are other definitions of "execution," of course, but none that relates to the process of putting a prisoner to death.

[6] *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993) (court's task in determining legislative intent is first to examine text of statute, including context in which statute is found and, if intent is "clear," to proceed no further with analysis).

limited access rules, OAR 291-024-0065, 291-024-0070, and 291-024-0080, which prevent the witnesses from seeing those latter activities, exceed the statutory authority of the agency and, thus, are invalid, because they impair the right granted to the witnesses under ORS 137.473 to view "the execution." ORS 183.400(4)(b).

In summary, we hold that the nondisclosure rules, OAR 291-024-0017 and 291-024-0020, are invalid, to the extent that they purport to place limits on the expression rights of persons who are granted by ORS 137.473 a right to be present at executions. We further hold that the limited access rules, OAR 291-024-0065, 291-024-0070, and 291-024-0080, are invalid, because they limit too severely the activities that the witnesses may see. Finally, we decline to address certain other challenges raised by petitioners, either because those challenges are rendered moot by our decision or because it is not clear that the basis for those challenges will remain relevant after DOC has taken such steps as it finds necessary to remedy the defects in the rules identified by this opinion.[7]

The decision of the Court of Appeals is reversed. Oregon Administrative Rules 291-024-0017, 291-024-0020, 291-024-0065, 291-024-0070, and 291-024-0080, are declared invalid to the extent stated in this opinion.

---

[7] Because we have declared all the DOC rules at issue to be invalid on statutory grounds, we do not reach petitioners' constitutional arguments.