Argued and submitted May 10, 2005; resubmitted en banc August 9,
judgment vacated; remanded to Department of Human Services
November 29, 2006

Robert WHEATON,
William Leissner, Bernieta Sherman,
Martha Katz, Carla Howard, Tabor Porter
and Oregon Advocacy Center,
*Appellants,*

*v.*

Ted KULONGOSKI,
individually,
*Defendant,*

*and*

Ted KULONGOSKI,
in his official capacity as
Governor of the State of Oregon,
Jean Thorne,
in her official capacity as
Director of the Oregon Department of Human Services
and Oregon Department of Human Services,
*Respondents.*

0301-01063; A122863

147 P3d 1163

Karen Berkowitz argued the cause for appellants. With her on the opening brief were Leslie Kay, Julia Olsen, Kit Morgan and Legal Aid Services of Oregon, and Spencer M. Neal and Oregon Law Center, and Steven Goldberg and Goldberg, Mechanic, Stuart & Gibson LLP. With her on the reply brief were Oregon Law Center and Julia S. Olsen and Legal Aid Services of Oregon.

Erika L. Hadlock, Assistant Solicitor General, argued the cause for respondents. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Schuman, Ortega, and Rosenblum, Judges.

LINDER, J.

Schuman, J., dissenting.

**LINDER, P. J.**

Petitioners are individuals who received benefits under the state's "medically needy" program, which is administered by the Department of Human Services (DHS). In late 2002, in response to budget cuts, DHS decided not to allocate funds to the program and to terminate it. DHS issued notices to petitioners advising them that their benefits under the medically needy program would be terminated, effective February 1, 2003. The notices also advised petitioners that they were not entitled to a hearing to contest DHS's decision to terminate their benefits. Some or all of the petitioners nevertheless requested contested case hearings but did not receive them. Petitioners then filed this proceeding in circuit court pursuant to ORS 183.484, which provides for judicial review of orders in other than a contested case. On various grounds, petitioners argued that DHS lacked authority to terminate the medically needy program and, therefore, that the orders terminating petitioners' benefits were invalid. The circuit court granted DHS's motion for summary judgment and entered a judgment of dismissal. Petitioners appeal.

On appeal, we do not reach the merits of petitioners' challenge to the validity of DHS's rules. As we explain below, we conclude that the notices issued to petitioners were orders in contested cases. Consequently, this court, not the circuit court, has the authority to review DHS's orders. The circuit court's only authority was to transfer or refer the case to this court, pursuant to ORS 14.165. Although the case is now properly before this court as a result of petitioners' timely appeal of the circuit court judgment, petitioners have not yet received the contested case hearings to which they are entitled. We therefore vacate the circuit court's judgment and remand the case to DHS.

To provide context for our discussion, we begin with a brief description of DHS's decision to terminate the medically needy program. We then turn to the issue that is pivotal to our disposition—whether DHS's notices to petitioners advising them that it was terminating their benefits were orders in other than contested cases or orders in contested cases.

The medically needy program was a state-run program for which the state obtained federal funding under the federal Medicaid program.[1] As we have already described, in late 2002, in response to legislative cuts to its budget, DHS decided not to allocate any funds to the medically needy program and, instead, to close and terminate the program altogether, effective February 1, 2003. To effectuate that policy choice, DHS adopted temporary and, later, permanent administrative rules. *See* OAR 461-135-0721 (declaring that the medically needy program "is not funded" and is closed effective February 1, 2003); OAR 410-120-1190 (declaring that the medically needy program is "eliminated" effective February 1, 2003). After the temporary rules were adopted, but before they took effect, DHS sent notices to petitioners advising them that their benefits under the medically needy program were to be terminated as of February 1, 2003, in accordance with DHS's decision to end the program due to budget cuts. In addition, DHS advised petitioners that they were not entitled to a hearing to contest the decision to terminate their benefits. DHS based that procedural advice on a third administrative rule change by which DHS amended OAR 461-025-0310(3) to state that a recipient of benefits has "no right to a hearing to dispute a program requirement established by law. Examples are the closure of a program or

---

[1] In 1965, Congress passed the Medicaid Act, 79 Stat 343, as amended, 42 USC §§ 1396 - 1396v, providing federal financial assistance to states that chose to reimburse financially needy persons for certain medical treatment costs. As explained in *Pharmaceutical Research and Mfrs. of America v. Walsh*, 538 US 644, 650-51, 123 S Ct 1855, 155 L Ed 2d 889 (2003):

"In order to participate in the Medicaid program, a State must have a plan for medical assistance approved by the Secretary of Health and Human Services (Secretary). 42 USC § 1396a(b). A state plan defines the categories of individuals eligible for benefits and the specific kinds of medical services that are covered. §§ 1396a(a)(10), (17). The plan must provide coverage for the 'categorically needy' and, at the State's option, may also cover the 'medically needy.'"

(Footnotes omitted.)

By way of a footnote, the Court explained that the "categorically needy" groups include "individuals eligible for cash benefits under the Aid to Families with Dependent Children (AFDC) program, the aged, blind or disabled individuals who qualify for supplemental security income (SSI) benefits, and other low-income groups such as pregnant women and children entitled to poverty-related coverage." *Id.* at 651 n 4. The Court also explained that "medically needy" persons are "individuals who meet the nonfinancial eligibility requirements for inclusion in one of the groups covered under Medicaid, but whose income or resources exceed the financial eligibility requirements for categorically needy eligibility." *Id.* at 651 n 5.

a change to a payment standard." Petitioners requested contested case hearings just the same, and DHS denied their requests.

Petitioners then sought judicial review in circuit court pursuant to ORS 183.484, which provides for review of final orders in other than contested cases. Advancing several theories, petitioners challenged the validity of DHS's rules that eliminated funding for and terminated the medically needy program. The trial court granted summary judgment in favor of DHS after concluding that there were no disputes of material fact and that the challenged rules were valid as a matter of law.

As already noted, the pivotal issue is whether DHS's notices were final orders in cases other than contested cases.[2] If so, the circuit court had jurisdiction to review them. *See* ORS 183.484 (circuit court has jurisdiction to review final orders in cases other than a contested case). If not, and if they were final orders in contested cases, then this court had jurisdiction to review them. *See* ORS 183.482(1); *Oregon Health Care Assn. v. Health Div.*, 329 Or 480, 488, 992 P2d 434 (1999) (petitions for judicial review are available under ORS 183.482 and ORS 183.484 only as to final orders); *Oregon Env. Council v. Oregon State Bd. of Ed.*, 307 Or 30, 37, 761 P2d 1322 (1988) (orders in contested cases are reviewed in this court). ORS 183.310(2)(a) defines a "[c]ontested case" to include

"a proceeding before an agency:

"(A) In which the individual legal rights, duties or privileges of specific parties are required by statute or Constitution to be determined only after an agency hearing at which such specific parties are entitled to appear and be heard[.]"

---

[2] Although the parties did not raise the issue of whether DHS's orders terminating petitioners' benefits are orders in contested cases, we asked them to address it because of its bearing on the circuit court's jurisdiction and authority in this case. More specifically, we asked the parties whether DHS's notices to petitioners are orders in contested cases, whether the notices are final orders, and, depending on their answers to those questions, the appropriate disposition of the appeal. The parties submitted additional briefing on those issues.

Under that definition, the correct characterization of DHS's orders depends not on whether DHS actually afforded each petitioner a hearing, but on whether DHS was required by a statutory or constitutional provision to do so. *Patton v. St. Bd. Higher Ed.*, 293 Or 363, 366-67, 647 P2d 931 (1982) (so interpreting the statute).

Petitioners point to ORS 411.095(3) as the source of DHS's legal obligation to offer them contested case hearings before terminating their benefits. That statute provides, in part:

> "[W]hen the department proposes to deny, reduce, suspend or terminate a grant of general assistance, a grant of public assistance or a support service payment used to support participation in the job opportunity and basic skills program, the department shall provide an opportunity for a hearing under ORS chapter 183."

■ By its express terms, the statute requires DHS to offer a hearing when the agency proposes to "terminate" a grant of general assistance or public assistance. Medically needy benefits qualify as such assistance, and DHS does not suggest otherwise. The plain text of ORS 411.095(3), together with the plain text of ORS 183.310(2)(a)(A), compels a conclusion that DHS was obligated to offer petitioners contested case hearings before proposing to end their medically needy benefits. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (first step in interpreting a statute is to consider text and context; other guides in interpreting a statute are considered only if text is ambiguous).

The next question is: Is that what DHS proposed to do in the notices that it sent to petitioners—that is, did DHS propose to terminate petitioners' grants of medically needy benefits? The answer is plainly yes. The notices were individually addressed and sent to petitioners at their personal addresses (presumably, their residences). The notices were entitled "End of Medical Benefits" and stated:

> "This notice is about an important change. The medical program which allows you to get a medical card each month is ending. It is called Medically Needy. The state no longer has the funding to provide this program. It will end on January 31, 2003.

> *"Because of this change, your medical benefits will end on January 31, 2003.*
>
> "* * * * *
>
> "This change affects many people in Oregon. We cannot grant a hearing based on the end of the Medically Needy program. *You have the right to request a hearing on other issues.* Read Part I on the back of this form for more information."

(Emphasis added.) Part I on the back of the form then explained, among other things, the specific procedures for hearings and expedited hearings and how a person should initiate a request for a hearing to which he or she has a right.

By their express terms, the notices did more than simply notify individuals receiving grants that the *program* was being terminated. After announcing the end of the program, the notices further told each individual grant recipient that "your medical benefits will end" as of a date certain. There is no ambiguity in that announcement. Each grant recipient was told that DHS was proposing to terminate his or her individual grant of assistance on January 31, 2003. To be sure, the notice also gave DHS's *reason* for taking that action (*i.e.*, the closure of the program). But DHS's explanation of *why* it was taking proposed action does not change the reality of *what* it proposed to do—that is, terminate the grant of monetary assistance to which each recipient, until then, had been entitled by way of a government grant. Thus, the action that DHS proposed to take falls squarely within the terms of ORS 411.095(3) and entitled petitioners to a hearing. In turn, under ORS 183.310(2)(a)(A), the hearing to which petitioners were entitled was a contested case hearing. *See also* OAR 461-025-0310(1)(l) (whenever a person is entitled to "a hearing" by rule or statute, DHS must provide that person with a "contested case hearing").

In arguing otherwise, DHS takes a narrow view of ORS 411.095(3). According to DHS, the statute requires it to offer a hearing only when it proposes to deny, reduce, suspend, or terminate a grant as a result of an "individualized decision directed at a specific recipient." Focusing on the reference in the statute to a "grant" of assistance, DHS argues that the statute does not apply to terminations of medically

needy grants of assistance due to a decision to terminate an entire program, as opposed to a decision terminating a grant based on individual-specific reasons. Moreover, according to DHS, when a grant is ended because the program of assistance is discontinued, a hearing would serve no purpose because there are no *individualized* facts to be adjudicated; rather, there is only the legislative-like policy decision to end the program to test. DHS urges that we should not interpret the statute to require the agency to perform the useless act of holding a contested case hearing to test a legislative-like policy choice of that kind. *See MacVeagh et al. v. Multnomah Co. et al.*, 123 Or 345, 349, 262 P 248 (1927), *modified on other grounds on reh'g*, 126 Or 417, 270 P 502 (1928) (a court should not presume that the legislature intended that a useless act should be done).

DHS asks us to read more into the statute than is there. The statute is not ambiguous or unclear. It provides for a right to a hearing when DHS proposes to terminate a grant of assistance. Period. There are no qualifications—no ifs, ands, or buts about it. To agree with DHS, we effectively would have to revise the statute to apply to some reasons for terminating grants and not to others. The statute does no such thing, however. It applies *whenever* DHS proposes to terminate a grant of assistance, regardless of the reason. Whether the legislature made a wise or unwise policy decision in that regard is not our place to decide. Even if we were to agree with DHS that such an absolute and unqualified policy choice on the legislature's part is unwise,[3] we are not at

---

[3] The policy choice is not ours to make. It is worth noting, however, that it is less than clear to us that a contested case hearing necessarily would be useless in these or any similar cases, as DHS urges. For one thing, contested cases are appropriate proceedings in which to raise even purely legal challenges to broad-based rules, which is how DHS characterizes petitioners' challenge in this case. *See* ORS 183.400(1); *Minor v. AFSD*, 105 Or App 178, 804 P2d 1170 (1991) (while a contested case remains available, or the ability to challenge the order in a contested case remains available, invalidity of a rule must be asserted in the contested case rather than through a petition to the Court of Appeals). To whatever extent petitioners' challenges to DHS's rules raise issues that require or would benefit from an evidentiary record, a contested case is an appropriate procedural means to develop that record. *See generally Oregon Newspaper Publishers v. Dept. of Corrections*, 329 Or 115, 118-19, 988 P2d 359 (1999) (distinguishing facial and "as applied" challenges to agency rules). Here, DHS made evidentiary submissions in support of its motion for summary judgment in the form of affidavits from DHS administrators that provided factual information about DHS's budget cuts and the reasoning behind its decision not to fund the medically needy program. Moreover, in theory at

liberty to refine the statute by adding a qualification that is not there. *See* ORS 174.010 (in construing a statute, court is not to insert what has been omitted).

The dissent takes a different tack and disagrees with our view of the substance of the notices themselves. According to the dissent, DHS's notices were not orders at all, but instead merely advised petitioners that the medically needy program was being terminated. *See, e.g.*, 209 Or App at 372 (Schuman, J., dissenting). Specifically, the dissent urges that "the notices themselves had no operative effect whatsoever; had DHS never sent them, petitioners would nonetheless have lost their benefits. The operative act that terminated petitioners' benefits was the promulgation of the rule that defunded the medically needy program." *Id.* at 373-74 (Schuman, J., dissenting).

Even DHS—which drafted and sent out the notices—does not take that view. Rather, DHS agrees that the notices were orders. DHS is correct. The notices expressly, and unequivocally, announced the termination of each petitioner's individual grant of assistance. Implicitly, the notices reflect DHS's decision to take some affirmative action directed to the individual recipients of the grants to terminate those grants; merely exhausting the funds in the program and ceasing to distribute benefits in accordance with the *grants* of assistance was not, as DHS's own notices reflect, how DHS chose to terminate those affirmative grants of benefits. DHS therefore issued individual notices to each petitioner announcing its intent to terminate each individual grant. That proposed action was exactly what is contemplated by the terms of ORS 411.095(3), and triggers a right to a hearing. Regardless of

least, even when individual grants are to be terminated due to a program closure, there could be individualized errors that require correction—for example, DHS could have the wrong date for terminating benefits or it could mistakenly propose to terminate a grant of assistance for someone whose grant is pursuant to a different program.

But in all events, even if DHS is correct and individualized hearings would not be useful, the argument is beside the point. As DHS acknowledges, the maxim of statutory construction on which it relies (*i.e.*, that a court should not construe a statute to require a useless act) can be considered only if the statute is ambiguous. Here, it is not. The statute requires DHS to offer a hearing when DHS proposes to terminate a grant of assistance, and it does so without regard to whether a hearing would be "useful" in the agency's decision-making process.

whether DHS had to proceed in that way, that is how it *did* proceed. Because it did, the notices were orders, as DHS concedes. *See* ORS 183.310(6)(a) (" 'Order' means any agency action expressed orally or in writing directed to a named person or named persons * * *[.]").[4]

Relying on its view of the purpose of the notices, the dissent argues alternatively that, even if ORS 411.095(3) requires a hearing in this case, the hearing to which petitioners were entitled is a rulemaking hearing, not a contested case hearing. There are three problems with the dissent's argument. First, DHS's own notice in this case advised petitioners that they were entitled to contested case hearings; the agency simply tried to limit the scope of that hearing by declaring that petitioners could not raise a challenge to the end of the program in any such hearing. Second, DHS by rule provides that a person has a right to a "contested case hearing" whenever a person is entitled to a hearing by rule or statute. OAR 461-025-0310(1)(l). In fact, DHS by rule provides

---

[4] The dissent points out that DHS had a statutory obligation to notify petitioners of its adoption of its temporary rule, *see* ORS 183.355(2)(b), and the notices to petitioners *may* have been DHS's attempt to comply with that obligation. 209 Or App at 374 n 1 (Schuman, J., dissenting). DHS, which drafted and sent the notices, does not take that view of them, significantly. Nor would such a view be well-founded. The terms of the notices were inadequate to satisfy DHS's statutory obligation to provide notice of its rulemaking. The notices announced the end of the medically needy program, but they said nothing about DHS's temporary rule and did not so much as cite the temporary rule that the agency had promulgated.

The fact that DHS did not send these notices to petitioners to meet its statutory obligation under ORS 183.355(2)(b) distinguishes *Calif. Table Grape Comm'n v. Dept. of Human Res.*, 109 Or App 222, 818 P2d 983 (1991), on which the dissent relies. Indeed, it makes the dissent's reliance on that case perplexing. In *Calif. Table Grape Comm'n*, we observed that the agency, in issuing the notices, "intended" the notice to comply with ORS 183.355(2)(b). The only question was whether its notices nevertheless were orders. In concluding that they were not, we relied first on what the agency intended in issuing them. 109 Or App at 225. Beyond that, the notices in that case were significantly different from these notices in substance. There, the notices "announced" an adoption of a prospective agency regulatory policy—*i.e.*, that food service facilities could no longer serve grapes preserved with sulfites. *Id.* We agreed with the agency's argument that the policy was not directed to a named person or persons and was therefore not an order within the meaning of ORS 183.310(6)(a). *Id.* The dissent misreads *Calif. Table Grape Comm'n* when it understands its "not an order" holding to apply to: (1) a notice directed to specific individual, as each of these notices unequivocally was; (2) a policy that cuts off an entitlement to an individually granted ongoing government benefit, as opposed to one that announces a change in regulatory policy with which someone must prospectively comply; and (3) a notice that the agency intended to be an order, rather than a notice pursuant to ORS 183.355(2).

that a person has a right to a "hearing" when it issues a "notice informing clients that their benefits are," among other things, "ended." OAR 461-105-0010(5). That is precisely what the notices in this case did. Thus, either by virtue of the terms of ORS 411.095(3) or by the terms of the agency's own rules, DHS was obligated to giving petitioners a contested case hearing, not a rulemaking hearing. Finally, even under the dissent's analysis, DHS did not meet its hearing obligation. DHS's notices did not tell petitioners that they had a right to a rulemaking hearing. Rather, DHS advised them that they had no right to challenge the decision to end the program. The dissent does not explain what consequences should flow from that wrong advice, but presumably, petitioners are entitled to some form of agency level hearing that they never received.

In all events, the dissent's view of the notices is wrong, and it is a view of them that DHS does not endorse. DHS agrees that the notices were orders. Its only disagreement is whether ORS 411.095(3) extends to a decision to terminate a grant of medical assistance based on program closure, rather than individual eligibility. As we have explained, the statute is unqualified and provides for an opportunity for a hearing regardless of the reason for terminating the individual grant of assistance. Because the statute gave petitioners a right to a hearing, the hearing to which they were entitled was a contested case hearing. ORS 183.310(6)(a); OAR 461-025-0310.

■ We therefore conclude that DHS's notices were orders in a contested case. We also conclude that they were final orders. ORS 183.310(6)(b) defines a "final order" as a "final agency action expressed in writing." The definition also specifically excludes "any tentative or preliminary agency declaration or statement" that "[p]recedes final agency action" or that does not preclude the agency from considering the subject matter further. ORS 183.310(6)(b)(A), (B). DHS concedes, and we agree, that the notices here were "final orders" because they reflected the agency's decision to terminate each petitioner's individual grant, an action that the agency presented as final and not subject to a hearing or

further consideration. Rightly or wrongly, the notices here announced DHS's final action.[5]

The question that follows from that conclusion is this: What is the appropriate disposition of this appeal? Before 2001, petitioners' pursuit of judicial review in circuit court rather than in this court would have been a jurisdictional defect, one that required any judgment entered to be vacated and the case to be dismissed. *See, e.g., Lone Oak Racing, Inc. v. Oregon Racing Commission*, 162 Or App 111, 123, 986 P2d 596 (1999). Petitioners' failure to timely file a petition for judicial review in this court would have been a procedural default that would prevent them from challenging DHS's orders.

In 2001, however, the legislature enacted ORS 14.165,[6] which was designed to "fix" at least a portion of the

---

[5] Petitioners argue that the orders they challenge must be considered tentative or preliminary because DHS did not hold the contested case hearings to which they are entitled. DHS's procedural failure bears on the correct disposition of this case, but it does not mean that DHS's notices were not final.

[6] ORS 14.165 provides, in pertinent part:

"(1) If an action or other proceeding against a public body is filed in circuit court and the circuit court does not have authority to decide the case, the circuit court shall:

"(a) Transfer the case to the court or tribunal authorized by law to decide the case if the circuit court determines that another court or tribunal is authorized by law to decide the case;

"(b) Refer the question to the Court of Appeals if the circuit court is in doubt whether there is another court or tribunal authorized by law to decide the case; or

"(c) Dismiss the action or proceeding if the circuit court determines that no other court or tribunal is authorized by law to decide the case.

"(2) If an action or other proceeding against a public body is filed in the Court of Appeals and the Court of Appeals does not have authority to decide the case, the Court of Appeals shall:

"(a) Transfer the case to the court or tribunal authorized by law to decide the case if the Court of Appeals determines that another court or tribunal is authorized by law to decide the case; or

"(b) Dismiss the action or proceeding if the Court of Appeals determines that no other court or tribunal is authorized by law to decide the case.

"* * * * *

"(5) Upon referral of a question to the Court of Appeals under this section, the Court of Appeals shall:

"(a) Transfer the case to the court or tribunal that the Court of Appeals determines to be authorized by law to decide the case;

"(b) Decide the case if the Court of Appeals is the appropriate court; or

problem that arises when a person challenging a government action seeks review in the wrong court. Among other provisions, the statute authorizes—and, indeed, requires—a circuit court in which judicial review is wrongly filed to transfer the case to the appropriate forum. ORS 14.165(1)(a). If the circuit court is unsure of which court or tribunal has authority to decide the case, the circuit court is to refer the case to this court, which then must make that determination. ORS 14.165(1)(b). Similarly, if the proceeding is wrongly filed in this court, we are to transfer the case to any other court or tribunal that has authority to decide the case. ORS 14.165(2)(a). If no court or tribunal has authority to decide the case—as might happen, for example, if an administrative order is not final—the proceeding is to be dismissed. ORS 14.165(1)(c), (2)(b). The statute specifies that, subject to exceptions that do not apply in this case, a transferred proceeding will not be dismissed as not being timely filed. ORS 14.165(7).

The parties agree that ORS 14.165 dictates the disposition of this appeal. They disagree, however, as to what that disposition should be. DHS maintains that, under ORS 14.165, this court should issue an order transferring the case to itself and then resolve petitioners' challenge to the validity of DHS's rules. In effect, DHS urges us to decide the merits

"(c) Dismiss the action or proceeding if the Court of Appeals determines that no court or tribunal is authorized by law to decide the case.

"(6) If an action or proceeding against a public body is transferred under this section, and the action or proceeding was filed in the transferring court within the time allowed by law for filing the action or proceeding in the receiving court or tribunal, the case may not be dismissed as not being filed within the time allowed by law.

"(7) If an action or proceeding against a public body is filed in circuit court or the Court of Appeals based on a reasonable interpretation of law, and the circuit court or the Court of Appeals determines that the case should be transferred under this section, the case shall be transferred to the appropriate court or tribunal in the manner provided by this section and may not be dismissed as not being filed within the time allowed by law if:

"(a) Under the interpretation of law made by the person filing the action or proceeding, the action or proceeding was filed in the proper court;

"(b) Under the interpretation of law made by the person filing the action or proceeding, the action or proceeding was timely filed in the transferring court; and

"(c) Any delay caused by the failure to file the action or proceeding within the time allowed for filing in the receiving court or tribunal does not substantially prejudice an adverse interest or public interest."

without a contested case hearing, evidently on the basis of the summary judgment record made in the circuit court. Petitioners, on the other hand, advocate that the appropriate disposition under ORS 14.165 is to transfer this case to the Office of Administrative Hearings for contested case hearings.[7] Petitioners, in effect, seek the contested case hearings that, we have concluded, DHS should have offered them before issuing final orders that terminate their benefits.

■        The one point on which the parties implicitly agree is that petitioners' failure to file in this court, and the fact that they filed in circuit court instead, does not deprive us of jurisdiction. We concur. ORS 14.165 was designed to cure the jurisdictional trap that arises by filing in the wrong forum, and it does so. Under the terms of that statute, if a party wrongly files an action or proceeding in either the circuit court or this court, and does so reasonably and without prejudicing an adverse interest or the public interest, the tribunal with authority to decide the case is not deprived of jurisdiction to decide it. ORS 14.165(7). Instead, the statute provides for the case to be transferred to the correct tribunal and for that tribunal to resolve it as though the proceeding had been timely filed in the correct forum in the first instance. Thus, petitioners' failure to timely file petitions for judicial review in this court was not a jurisdictional defect.

That does not mean, however, that the circuit court could resolve petitioners' challenge to DHS's rules. ORS 14.165 does not expand or alter this court's or the circuit court's authority to review administrative orders. Because the notices terminating petitioners' benefits were final orders in contested cases, ORS 183.482 vests this court, not the circuit court, with the authority to review those orders. In this case, the circuit court's authority, which it had by force of ORS 14.165, was limited to transferring or referring the case to this court.[8]

---

[7] Petitioners, as we earlier described (*see* 209 Or App at 367 n 5), urge that such relief follows because the orders are not final.

[8] DHS in fact moved for a transfer order, but did so on the theory that petitioners' challenge should have been brought under ORS 183.400, which gives this court original jurisdiction over challenges to administrative rules. Alternatively, DHS asked the circuit court to refer the case to this court so that this court could determine which tribunal had authority to resolve petitioners' challenges.

Although the case did not come to this court on a transfer or referral order, it did come to us through a procedurally proper vehicle—that is, a timely filed notice of appeal of the circuit court judgment. The problem, however, is that DHS has yet to provide petitioners with contested case hearings to challenge its proposed termination of their benefits. On timely request, each petitioner is entitled to a contested case hearing conducted by an administrative law judge (ALJ) in the Office of Administrative Hearings. ORS 183.635. After that hearing, DHS may either affirm the ALJ's proposed order or explain its reasons for modifying it. ORS 183.650(2). If the orders are adverse to petitioners, they will be entitled to seek judicial review by this court. Petitioners' challenges to DHS's orders will then come to this court on a fully developed record and with a fully articulated order by DHS.

As matters now stand, we do not have the benefit of an administrative order issued after a full contested case hearing; we have only the summary judgment determination of the circuit court. Both legally and practically, petitioners have not received the equivalent of either a contested case hearing or of an articulated administrative order that would follow a contested case hearing. ORS 14.165 permits us to exercise jurisdiction over the case, but it does not permit us to deny petitioners the administrative hearings to which they are entitled. Said differently, nothing in ORS 14.165 permits us to substitute a circuit court proceeding—especially one resolved on summary judgment—for a contested case hearing held by the administrative agency charged with providing one.

Consequently, we conclude that petitioners must be given contested case hearings. Until then, the merits of their challenges to DHS's rules and DHS's defense to those challenges are not properly before us for resolution. The appropriate disposition is to vacate the circuit court judgment and to give petitioners the relief they would have received had

Petitioners, in response, urged that their rule challenge properly could be brought as part of a proceeding to review DHS's orders terminating their benefits, rather than as an original proceeding in this court under ORS 183.400. The trial court denied DHS's motion to transfer the case and resolved the merits of petitioners' challenge on summary judgment.

they timely filed for review in this court—*i.e.*, a remand to the agency to offer petitioners contested case hearings to challenge the termination of their benefits.[9]

Judgment vacated; remanded to Department of Human Services.

**SCHUMAN, J.,** dissenting.

In 2002, the Department of Human Services (DHS), responding to a $2,600,000 budget cut, promulgated a temporary rule terminating a program for medically needy individuals and shortly thereafter sent to each of the program's beneficiaries a notice of its termination effective February 1, 2003. Petitioners, who were receiving benefits under the program at the time, requested contested case hearings. When the agency denied their requests, petitioners sought judicial review in Multnomah County Circuit Court. Their petition, as ultimately amended, claimed that, in terminating the program, the agency exceeded its statutory authority and violated several provisions of the Oregon Constitution. They sought invalidation of the rule, an injunction against its enforcement, and a declaration setting aside the notices they had received informing them of the program's termination. DHS filed a motion to remove the case to the Court of Appeals; that court, according to DHS, had exclusive jurisdiction because the case was a challenge to a rule and not to an order. ORS 183.400(1). The court denied the motion, ruling instead that the case was properly filed in the circuit court because it was a challenge to orders in other than contested cases. ORS 183.484. Thereafter, the court allowed DHS's motion for summary judgment and denied petitioners' motion for a preliminary injunction. Petitioners appeal.

The majority does not reach the merits, holding instead that the trial court erroneously treated the notices that DHS sent to petitioners as "orders in other than contested cases," review of which was in the circuit court.

---

[9] From the affidavits submitted by petitioners in the circuit court proceedings, it appears that most petitioners timely requested contested case hearings despite DHS's notice advising them that they were not entitled to a hearing. For any petitioner that may not have requested a hearing, DHS must correct its notice to advise them that they are entitled to a hearing.

Rather, the majority holds, the notices were "orders in contested cases," review of which is in this court. ORS 183.482. 209 Or App 360-64. The majority goes on to hold that, because petitioners should have been granted individual contested case hearings, the proper disposition of the case is to remand it to DHS so that such hearings can take place. *Id.* at 370-71.

I dissent. In my view, the trial court erred at the outset when it determined that it, and not this court, had jurisdiction. The notices that DHS sent to petitioners were not orders at all. They were nothing more than notices, and, for that reason, the circuit court never had jurisdiction. *See Calif. Table Grape Comm'n v. Dept. of Human Res.*, 109 Or App 222, 818 P2d 983 (1991) (discussing difference between notices and orders; holding that circuit court has no jurisdiction to review nonorders).

To reach the conclusion that petitioners were entitled to contested case hearings, the majority invokes the statutory definition of that term, which includes a proceeding before an agency in which "individual legal rights * * * of specific parties are required by *statute* * * * to be determined only after an agency hearing at which such specific parties are entitled to appear and be heard[.]" ORS 183.310(2)(a)(A) (emphasis added). The majority then identifies ORS 411.095(3) as the statute serving as "the source of DHS's legal obligation" to provide petitioners with contested case hearings. 209 Or App at 361. That statute provides, in part:

> "[W]hen [DHS] proposes to deny, reduce, suspend or terminate a grant of general assistance, a grant of public assistance or a support service payment used to support participation in the job opportunity and basic skills program, the department shall provide an opportunity for a hearing under ORS chapter 183."

Immediately after quoting the statute, the majority states:

> "By its express terms, the statute requires DHS to offer a hearing when the agency proposes to 'terminate' a grant of general assistance or public assistance. Medically needy benefits qualify as such assistance, and DHS does not suggest otherwise. The plain text of ORS 411.095(3), together

with the plain text of ORS 183.310(2)(a)(A), compels a con-
clusion that DHS was obligated to offer petitioners con-
tested case hearings before proposing to end their medically
needy benefits. *See PGE v. Bureau of Labor and Industries,*
317 Or 606, 610, 859 P2d 1143 (1993) (first step in inter-
preting a statute is to consider text and context; other
guides in interpreting a statute are considered only if text is
ambiguous)."

*Id.* at 361. The majority's assertion that the "plain text" of the
statute requires *contested case* hearings is manifestly wrong.
The "plain text" of ORS 411.095(3) nowhere "expresses" the
term *contested case,* nor does it refer to ORS 183.310(2)(a)(A).
What the statute's plain text expressly states is that, when
DHS proposes to terminate a grant, it "shall provide an
opportunity for *a hearing under ORS chapter 183.*" (Empha-
sis added.) ORS chapter 183 provides for two kinds of hear-
ings: contested case hearings, ORS 183.413 to 183.470, and
rulemaking hearings, ORS 183.335.

It is arguable that the term "hearing under ORS
chapter 183" means a contested case hearing. But I use the
term "arguable" advisedly. To establish that interpretation,
particularly in light of the fact that, as this case demon-
strates, sometimes a grant is terminated by virtue of a rule
and sometimes by virtue of an individualized determination
that a person does not meet preexisting criteria, the majority
needs to do more than rely on an erroneous assertion. It
needs to provide an argument.

As I attempt to show below, I believe that examina-
tion of the text, context, and legislative history of ORS
411.095(3) demonstrate that the statute does not entitle peti-
tioners to a contested case hearing. But the majority opinion
suffers from a more fundamental flaw, which I address first:
ORS 411.095(3) simply does not apply in this case.

The majority's premise is that the notices sent by
DHS to petitioners are orders that terminate a grant of gen-
eral or public assistance. But the notices themselves had no
operative effect whatsoever; had DHS never sent them, peti-
tioners would nonetheless have lost their benefits. The oper-
ative act that terminated petitioners' benefits was the prom-
ulgation of the rule that defunded the medically needy

program.[1] The notices did not announce a decision to terminate "*a grant*"; they announced the results of a quasi-legislative decision to terminate a *program*. The rule, not the notices, had an impact on petitioners' rights.

Indeed, we have already decided the issue. In *Calif. Table Grape Comm'n*, the Health Division of the Department of Human Resources (Division) adopted a temporary rule prohibiting the sale of all sulfite-treated foods. 109 Or App at 224. Within a few days, the Division sent notices of the new rule to all food service facilities, concluding with the statement, "*As of November 1, 1988, grapes treated with sulfites cannot be served in a food service facility.*" *Id.* at 225 (emphasis in original). Petitioners sought review of the notice in circuit court, arguing that the notice was an order in other than a contested case. This court, sitting en banc, rejected that argument:

> "Division contends that the notice is not an 'order,' because it is directed generally to all food service facilities, not to a named person or persons. In addition, it contends that, because the notice does not mandate specific action by any party or alter the interpretation of existing rules, it is only intended to announce the reinstatement of [an earlier rule] upon expiration of the temporary rule.

> "We agree. The notice is intended to fulfill the requirement that affected persons must be notified of a rule change. ORS 183.355(2)(b). Petitioners' challenge to the notice is intended as a challenge to the validity of OAR 333-151-010(4). That challenge is before this court in [a separate case involving the same parties.] * * * The notice was not an order within the meaning of ORS 183.310(5)(a) and petitioners are not entitled to judicial review in circuit court under ORS 183.484. The circuit court properly dismissed the petition for lack of jurisdiction."

---

[1] Indeed, because the rule that DHS announced in the notices was a temporary rule, DHS was under a statutory obligation to notify petitioners. ORS 183.355(2)(b); *Calif. Table Grape Comm'n*, 109 Or App at 225 (under ORS 183.355(2)(b), affected persons "must be notified" of rule change implemented by temporary rule). DHS may or may not have sent the notices in an attempt to comply with the statute. Regardless, the necessary implication of the majority opinion is that *whenever* an agency lawfully promulgates a temporary rule, *every person affected by it will be entitled to a contested case hearing.*

*Id.* The only difference between *Calif. Table Grape Comm'n* and this case is inconsequential. There, the notices were addressed to all "food service facilities," *id.* at 224, where in the present case, each notice is captioned with a recipient's name. In both situations, however, the notices were evidently mailed to individuals named on the envelope, *see id.* at 224 ("Division *sent* a notice of the rule * * *." (Emphasis added.)), and in both cases the notice was addressed to a discrete group of individuals: operators of food service facilities governed by the Division, in the earlier case, and, in the present case, recipients of benefits under the medically needy program. The legal principle governing the cases is identical: When, after promulgating a rule—particularly a temporary rule— an agency sends notice of that rule to those who are affected by it, the notices are not orders in contested cases and the circuit court does not have jurisdiction to review them. Rather, the proper challenge is to the rule of which the notices inform recipients, and review of that rule is in this court pursuant to ORS 183.400.

Thus, ORS 411.095(3) is simply not relevant in this case. Even if it were, however, it does not entitle petitioners to contested case hearings. The statute began as House Bill (HB) 1213 (1971), later enacted as Oregon Laws 1971, chapter 734, section 41. According to a memorandum prepared by the Administrative Law Committee of the Oregon State Bar, the bill's principal drafter, the bill performed two functions: it amended the existing Administrative Procedures Act (APA), and it made conforming amendments to various provisions elsewhere in the ORS. Section 41 appears to be among the conforming amendments, although, oddly, there was no preexisting statute to amend. In any event, the committee provided the following rationale for the conforming amendments:

> "The Committee undertook to amend only those sections of ORS that were inconsistent with H[B] 1213 or created ambiguities. Where the existing provision does no more than authorize adoption of regulations or the holding of hearings, but does not specify procedure, any specific reference to ORS 183 is unnecessary. H[B] 1213 speaks in mandatory terms and does not require incorporative language to be effective on all state actions of whatever nature,

so long as there are no inconsistent provisions in other statutes.

"Where a hearing was of a type (i.e. revocation of an occupational license) which H[B] 1213 requires to be a 'due process' hearing, the conforming legislation does not incorporate the requirement that the hearing be conducted as a 'contested case.' Where, however, the hearing would not by force of H[B] 1213 be a 'due process' hearing, but the legislative intent was clear, we have specifically provided that the hearing shall be held as a 'contested case.' Where it was unclear which type of hearing was intended by the legislature, we left the matter as it now exists."

I interpret this somewhat cryptic explanation as follows: In combing through the ORS to find statutes that needed conforming amendments, the drafters found statutes describing various types of proceedings before agencies. First, they found statutes that called for hearings that were of a type that the APA, as amended by HB 1213, would explicitly and by its own force require to be contested case hearings, for example, revocation of an occupational license, named as a contested case in HB 1213. Statutes in that category did not need amendments because they clearly called for contested case hearings. The second category included statutes in which the legislature clearly intended that contested case hearings should occur, but the statutes were not specifically named in HB 1213 ("where the hearing would *not by force of H[B] 1213* be a 'due process' hearing" (emphasis added)). Included in this category would be situations that, in the terms of HB 1213, "are required by statute or Constitution to be determined only after an agency hearing at which specific parties are entitled to appear and be heard." In other words, this category includes proceedings that are brought into HB 1213 by incorporation (via the constitution or some statute that is not HB 1213), as opposed to proceedings in the first category that are actually named in HB 1213. When the legislature's intention to confer contested case status on such proceedings was clear, the committee "specifically provided that the hearing shall be held as a 'contested case.' "

Notably, section 41, later ORS 411.095(3), was *not* in that category. The legislature did *not* "specifically provide that the hearing shall be held as a 'contested case.' " The

unavoidable inference is that the drafters of HB 1213, including section 41, did *not* believe that the legislature clearly intended (or would have intended) the hearings in that section to be contested case hearings. Rather, section 41 would fall into the third category: statutes "where it was unclear which type of hearing was intended by the legislature."

At the very least, this legislative history compels the following conclusions. First, the drafters of ORS 411.095(3) knew how to specify that a hearing had to be a "contested case" and they did not do so. Second, the drafters of ORS 411.095(3) did not believe that the legislature clearly called for contested case hearings under ORS 411.095(3). That being the case, I would argue that the context of ORS 411.095(3), which includes ORS chapter 183, would compel the conclusion that, when the termination of a grant of public assistance results from a quasi-legislative decision, no contested case hearings need occur. That is so because not only the Oregon APA, but all of administrative law, flows from the fundamental difference between quasi-adjudication and quasi-legislation, and the constitutionally mandated procedures that each entails: contested case hearings and "on the record" decisions for quasi-adjudication, and mere procedural regularity for quasi-legislation.

In sum, I would hold that the notices under challenge in this case are not orders. The circuit court lacked jurisdiction to review them. Petitioners' challenge is only to the rule ending the medically needy program; they assert that it violates the constitution and that it exceeds the agency's statutory authority, both assertions that are cognizable under ORS 183.400. The challenge should have been brought originally in this court. We should either remand the case to the circuit court with instructions to transfer the case back to us, *see* ORS 14.165(1)(a), or, in the interest of judicial economy and the timely disposition of cases, decide it on the merits now.

Brewer, C. J., and Landau and Armstrong, JJ., join in this dissent.